W. G. NEWBY AND F. M. WEEKS v. ATLANTIC COAST REALTY
COMPANY AND J. W. FERRELL.

(Filed 22 September, 1920.)

**1. Contracts—Breach—Options—Measure of Damages—Crops.**

Plaintiff sued to recover damages for breach of contract, alleging failure
of defendant to furnish the money to take up an option on lands expiring
at a certain date, with a further agreement to sell the land and pay the
plaintiff one-half the profits less one-half the expense of sale, and to fur-
nish the money for the cultivation of crops for a year under plaintiff's
management with a division of the profits on the crops: *Held,* upon
establishing the contract, and defendant's breach, the measure of plain-
tiff's damage is one-half the profits which would have been made upon a
resale of the property in the exercise of reasonable care and judgment, and
one-half of the loss sustained for the failure to make the crops which
might naturally be supposed to have followed its violation, certain both
in its nature and in respect to the cause.

**2. Same—Instructions—Appeal and Error.**

Where the measure of damages for a breach of contract of the defend-
ant to take up an option at a certain date, is such as would arise from
profits prevented in the resale of the land, at a future date, and also from
crops to be raised on the land during a certain year, etc., it is reversible
error for the judge to charge the jury that it would be the difference
between the purchase price in the option and the market value of the land
at the expiration period thereof, as such was not within the contemplation
of the parties, or within the purview of the contract.

**3. Contracts—Breach—Options—Prospective Profits—Crops—Measure of
Damages.**

Where the recovery of damages in an action depends upon the breach
of defendant's agreement to take up plaintiff's option on lands before its
expiration, and the profit that could have been made thereon by reselling
the land, the market value of the land and the contemplated sales is
material but not controlling, and the circumstances, such as the size of
the land, the opportunity to secure purchasers, etc., and the condition of
the money market, etc., may be considered.

**4. Evidence—Declarations—Hearsay—Corroboration.**

Where evidence of the value of lands is competent, upon the question
of the measure of damages for defendant's failure to take up the plaintiff's
option thereon, testimony that one who had previously held an option on
the same land that he would not take a certain price therefor, are in-
competent as unsworn declarations, and cannot be considered in rebuttal,
when the declarant had been on the stand himself and had not testified
on the subject.

**5. Evidence—Contracts—Admissions.**

Where the breach by defendant of his contract is the subject of the
action, the plaintiff may not testify to the breach of a prior contract,
when relevant, to show the inducement, the relation of the parties, and
the measures for entering into the contract sued on, after he has testified
that the prior contract had been abrogated.

APPEAL by defendant from *Cranmer, J.,* at the April Term, 1920, of
PERQUIMANS.

This is an action to recover damages for breach of contract.

In 1918 the plaintiffs procured an option on the Fleetwood farms in
Perquimans County; giving them the right to buy the farms and the
stock and the farming implements thereon by 1 January, 1919, for
$96,875, and subsequently entered into a contract with the defendants
giving them an interest in the option.

Pursuant to agreement between the parties, the land was offered for
sale on 6 December, 1918, when, the crowd at the sale not being as
expected, the land was bought in for the benefit of the plaintiffs and
defendants, and the plaintiffs allege that the first contract was then
abrogated and a new contract made, which is the contract sued on, and
by the terms of which the defendants agreed that the property bought
at said sale on 6 December was to be held for a higher profit and sold
as opportunity offered; that the defendant realty company would furnish
the money to comply with the option, and would also furnish the money
necessary to cultivate said lands during the year 1919, and that the
plaintiffs should have one-half of the profits arising from the sale of the
lands less the expenses of the sale, and one-half the profits from the
cultivation of the lands.

The plaintiffs introduced evidence tending to establish the contract,
which was not in writing, as alleged by them, and its breach, and also
evidence as to the damages they were entitled to recover.

The defendants denied the execution of the contract, and also denied
that the plaintiffs had suffered any damage.

His Honor, among other things, charged the jury as follows:

"As to the land, what damages are plaintiffs entitled to recover on
account of defendant's refusal to finance the proposition? And when
you come to consider this issue, if you do consider it, I charge you that
the measure of damage is the difference between the price of the land
in the option, to wit, $96,875, and the fair market value of the land on
1 January, 1919, whatever you find the fair market value to be. And
if you find there was a contract, plaintiffs will be entitled to one-half
of the difference between the price named in the option and the fair
market value of the land and chattels on 1 January, 1919. There is no
contention about the price named in the option, which is $96,875, so
that will give you no trouble. You are to find the fair market value of
the property on 1 January, 1919, and then one-half of the difference
between it and the option price will be the sum you should write as your
answer," and the defendants excepted.

The jury returned the following verdict:

"1. Did plaintiffs and defendant enter into the contract, as alleged in the complaint? Answer: 'Yes.'

"2. Were plaintiffs ready, able, and willing to comply with said contract? Answer: 'Yes.'

"3. Did defendants wrongfully breach said contract, as alleged in the complaint? Answer: 'Yes.'

"4. What damages are plaintiffs entitled to recover?

"(a) On account of defendant's refusal to finance the proposition? Answer: '$15,000.'

"(b) On account of profits in farming operations? Answer: '$7,500.'"

There was a judgment in favor of the plaintiffs, and the defendants appealed.

*Ehringhaus & Small and Meekins & McMullan for plaintiffs.*

*Chas. Whedbee, Thompson & Wilson and Aydlett & Simpson for defendants.*

ALLEN, J. There is no exception in the record requiring the consideration of the application of the statute of frauds to the contract on which the defendants declare, and the case has been tried on two questions—the existence of a contract and its terms, and the amount of damages in the event of a breach.

The first of these questions is one of fact, and is not complicated by any legal questions except as to the admissibility of evidence, but the second involves the rule for the measurement of damages, which cannot be correctly laid down without a clear apprehension of the nature of the contract.

In the first place, the plaintiffs are not asking to recover damages for breach of contract to convey land. If they had done so, and the contract had been in writing, the rule laid down by his Honor would have been the true measure of damages, being one-half of the difference between the option price and the market value of the land at the time of the breach, but being by parol if one to convey the land, the statute of frauds would be a complete defense.

The plaintiffs are asking to recover damages for breach of a contract by the terms of which, as they allege, the defendants agreed to furnish the money to take up the option, which expired on 1 January, 1919, and to sell the land and pay the plaintiffs one-half the profits less one-half the expenses of sale, and to furnish the money for the cultivation of the lands for the year 1919, under the management of one of the plaintiffs, and to pay the plaintiffs one-half the profits from the crops.

What, then, is the measure of damages for the breach of the contract sued on?

Damages are awarded as a compensation for the breach.

"Generally speaking, the amount that would have been received if the contract had been kept, and which will completely indemnify the injured party is the true measure of damages for its breach. *Benjamin v. Hilliard,* 23 How., 149; *Mace v. Ramsey,* 74 N. C., 14. When one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain both in their nature and in respect to the cause from which they proceed." *Machine Co. v. Tobacco Co.,* 141 N. C., 289.

"The amount which would have been received if the contract had been kept is the measure of damages if the contract is broken, and this means the value of the contract, including the profits and advantages which are its direct results and fruits." 8 R. C. L., 452.

"As a general rule, a party not in default is, in case of a breach of contract due to the fault or omission of the other party, entitled to recover profits which would have resulted to him from performance." 17 C. J., 788.

In other words, the plaintiffs are entitled to be put in the same position they would have been in if the contract had been performed, and to recover only what has been lost by nonperformance, and tested by this principle instead of being entitled to the difference between the option price and the market value of the land on 1 January, 1919, they ought to recover, if they sustain their contentions, one-half the profits which would have been made upon a resale of the property in the exercise of reasonable care and judgment.

His Honor has fixed the date for the ascertainment of the damage as of 1 January, 1919, the time when the option expired, when it was not within the contemplation of the parties that the land should be sold at that date or that any profit should then be realized, and when, according to the plaintiffs, it had been agreed that the land should be sold at a later date, and the profits then divided.

The market value of the lands, when the lands could be reasonably sold under the contract, will be material, but not controlling, and other circumstances, such as the size of the land, the opportunity to secure purchasers for so large a body of land, the condition of the money market, may properly be considered.

We are therefore of opinion that there has been substantial error committed against the defendants.

His Honor also permitted the witness, T. B. Waters, to testify that he heard Mr. Charles Whidbee, who held an option on the land prior

to the option secured by the plaintiffs, say that he would take $150,000 for the land, and that if the witness would take it for that price he could easily get that for it.

Mr. Whidbee had been examined as a witness in behalf of the defendants, but he did not testify as to the value of the land, and this declaration, therefore, had no tendency to contradict him, and was incompetent as an unsworn declaration.

The plaintiffs were also permitted to introduce evidence tending to show a breach of the first contract by the defendants when the plaintiffs testified that this contract had been abrogated, which was erroneous.

Evidence as to the first contract was only permissible as matter of inducement to show the relation of the parties at the time of making the second contract, and the reasons for entering into it.

There must, therefore, be a

New trial.