EAST COAST DEVELOPMENT CORP. v. ALDERMAN-250
CORPORATION

No. 7615SC61

(Filed 15 September 1976)

1. Contracts § 17— indefinite duration — unilateral termination

A contract of indefinite duration may be unilaterally terminated
by either party on giving reasonable notice after the contract has
been in effect for a reasonable time, taking into account the purpose
the parties intended to accomplish.

2. Contracts § 17— termination of contract — reasonable time — question
of fact

Whether a contract had been in effect for a reasonable time was
a question of fact to be determined by the court in a nonjury trial
where different inferences could have been drawn from the evidence.

3. Contracts § 17— duration of contract — reasonable time

The evidence supported the trial court's finding that a contract
for the marketing of certain commercial properties had not been in
effect for a reasonable period of time when defendant attempted to
terminate the contract some four years and three months after it was
entered.

4. Contracts § 12— construction of contract — cost basis of property

Where a contract provided that defendant would first recover
its cost basis from the proceeds of a sale of land and that any pro-
ceeds over and above said cost basis would be divided equally between
plaintiff and defendant, and the contract specified the cost basis as a
certain amount, defendant was not entitled to add to its cost basis
interest and taxes expended to carry the property from the time the
contract was entered until the property was sold.

5. Damages § 11— punitive damages

Punitive damages may be awarded when an act is done with
wilfulness or under circumstances of rudeness, oppression, or reckless
and wanton disregard of the plaintiff's rights.

6. Damages § 11; Contracts § 29— punitive damages — insufficient find-
ings

The trial court's finding that defendant's conditional tender to
plaintiff of only a portion of the sum due under the terms of a con-
tract constituted a conversion of the sum due was insufficient to
support an award of punitive damages to plaintiff.

7. Contracts § 27— sufficiency of evidence to support findings — cost
basis of property

The evidence supported the trial court's finding that plaintiff and
defendant mutually agreed to an extension of water and sewer lines
to property which was the subject of a contract between them, and
the court properly concluded that defendant was entitled under the

Development Corp. v. Alderman-250 Corp.

contract to add the development costs of the water and sewer lines to its cost basis in the property in determining the profits to be divided between plaintiff and defendant upon a sale of the property.

8. **Contracts § 29; Appeal and Error § 52— breach of contract — damages — incorrect award by court — invited error**

In an action for breach of contract to market and sell certain property and divide the proceeds exceeding defendant's cost basis in the property, the trial court's award of damages to plaintiff based upon a determination of the fair market value of the property on the date defendant repudiated its agreement with plaintiff, rather than upon the amount for which the property could have been sold in the exercise of reasonable care and judgment, constituted invited error where the damages awarded were those requested by plaintiff in its complaint, no evidence of the amount for which the property could have been sold was presented at the trial, and plaintiff failed to object at trial to the measure of damages.

APPEAL by plaintiff and defendant from *Alvis, Judge.* Judgment entered 24 July 1975 in Superior Court, ORANGE County. Heard in the Court of Appeals 6 May 1976.

Plaintiff filed a complaint alleging that in 1965 Gus and Andrew Karres (the "Karres brothers") entered into a parol agreement with defendant whereby they transferred to defendant their interest in two pieces of real estate: the Crowell-Little property and the Roberson property (in which the Karres brothers had an undivided one-fourth interest); that the parol trust agreement was subsequently incorporated into a written contract dated 23 August 1968 between the plaintiff, as nominee for the Karres brothers, and defendant pursuant to which plaintiff and defendant were to market and sell four properties, including the Crowell-Little property and the Roberson property; that pursuant to the contract plaintiff procured a buyer for the Crowell-Little property and defendant sold the property to said buyer by deed dated 30 November 1972 for $300,000 whereupon plaintiff made demands for $74,655.88, one-half of the net sale proceeds, but defendant refused and offered plaintiff only $31,128.02 as full payment which plaintiff refused to accept; that defendant has since wilfully converted plaintiff's share of the profits to its own use with the result that plaintiff is entitled to punitive damages in the amount of $1,000,000; that defendant has also refused to cooperate in any way with plaintiff in efforts to market the Roberson property as required by the contract but has given written notice to plaintiff dated 29 September 1972 of its ex parte termination of the contract as of 30 November 1972; that by written notice dated 17 November

1972 plaintiff denied any right of defendant to terminate the contract and demanded that defendant honor its terms; that defendant has since negotiated a sale or transfer of the Roberson property to a joint venture in which defendant is a participant for the purpose of developing the property in derogation of plaintiff's right of first refusal under the contract; and that plaintiff has no adequate remedy at law for such derogation and is therefore entitled to specific performance of the contract as to the Roberson property or, in the alternative, damages based on a presumed sale of the Roberson property at the fair market value at the time of defendant's breach and division of the proceeds in accordance with the contract formula.

Defendant answered, admitting the existence of the contract but alleging that due to plaintiff's failure to procure any bona fide prospects for the sale of the property, with the exception of the Crowell-Little property which buyer had procured after the notice of termination was given, it effectively terminated the contract on 30 November 1972 and said termination bars any rights in plaintiff regarding the Roberson property. Defendant further alleges that plaintiff is entitled to only $31,128.02 as its share of the proceeds from the sale of the Crowell-Little property. Defendant filed the contract as an exhibit and it provides that defendant and plaintiff "contract and agree that they will jointly develop and/or market the real estate hereinabove . . . referred to to the end that [defendant] will receive its costs in said properties, after which the parties hereto will divide any profits made from the marketing and/or developing of said properties equally"; that the "cost basis" of the Crowell-Little property is $150,388.24 and the "minimum sale figure" is $300,000; that the "cost basis" of the Roberson property is $56,187.59 and the "minimum sale figure" is $300,-000; (two other properties are listed in the contract but the trial court's findings and conclusions relating to them are not the subject of appeal by either party); that "any further development costs mutually agreed upon by the parties hereto which are expended on said property by [defendant] shall be added to [defendant's] cost basis and also will be added to the minimum sales figure . . . " ; that "upon the sale of the . . . properties . . . [defendant] will first recover its cost basis from the proceeds of each individual sale and any proceeds over and above said cost basis . . . shall be equally divided between [defendant] and [plaintiff] . . . " ; that "in the event either of the parties

obtains a prospective buyer for any of the properties . . . at or above the minimum sales price herein contained and desires to consummate a sale at said price, the other party to this agreement will have the option and right of first refusal . . . " ; and that defendant "will have the right to receive and retain the operating income of the properties during the time that it has ownership of same and further agrees to absorb any operating losses that occur from said property during said period of time." The contract provides no expiration date.

At trial, plaintiff presented evidence which tended to show that the consideration for the contract was the dismissal of certain litigation between the Karres brothers and defendant; that with regard to the Crowell-Little property plaintiff has never agreed orally or in writing to the addition of any development costs to defendant's cost basis; that plaintiff made substantial efforts to procure purchasers of the Crowell-Little property from 1968 to 1972 when it was finally sold; that plaintiff also made substantial efforts to sell the Roberson property, but was unable to firm it up because defendant refused to supply the necessary information regarding outstanding obligations on the property; that plaintiff did not disclose the prospective purchaser's name to defendant but did tell defendant it had a bona fide offer of $350,000 but defendant still refused to supply the necessary information; that two partnerships have been formed and contracts entered into by defendant with the objective of developing the Roberson property as opposed to selling it but plaintiff was never notified of or consulted in regard to such plans; and that development costs have been incurred for the Roberson property but they have never been approved by plaintiff. Plaintiff presented testimony of several real estate appraisers as to the fair market value of a one-fourth undivided interest in the Roberson property as of 30 November 1972; $480,000, $474,439, and $417,500.

Defendant presented evidence which tended to show that it expended a substantial amount in interest and taxes to carry the Crowell-Little property from 1968 until it was sold thereby creating a total cost basis for the property of $237,743.98 as opposed to the amount specified in the contract; that following the sale of the Crowell-Little property defendant offered plaintiff a check in the amount of $31,138.02 which check bore the legend, "Commission on sale of Crowell Little Property Per Agreement of 8/23/68," but plaintiff refused the check and the

funds were then co-mingled with other funds of defendant; that the check was offered to plaintiff "with no strings attached"; that in regard to the Roberson property, defendant has attempted to sell it since 1968 but the minority ownership always presented a stumbling block; that plaintiff expressly requested that utilities and water services be extended to the Roberson property in order to make it more saleable; that $46,497.51 was expended by defendant for sewer and water extension from Chapel Hill to the Roberson property line and additional taxes, engineering and survey fees were paid bringing the total cost basis of the Roberson property to $122,051.48; and that defendant did refuse to give information regarding certain property other than the Roberson property to plaintiff because plaintiff never identified its prospects so that defendant could run a credit check on them. Defendant presented the opinion of two appraisers as to the value of a one-fourth undivided interest in the Roberson property as of 30 November 1972; $281,500 and $250,000.

The trial court entered an order finding that the Crowell-Little property was sold for $300,000 and the parties had stipulated that selling expenses of $300 could be deducted from the gross proceeds; that subsequent to 30 November 1972 defendant, with the owners of the three-fourths interest in the Roberson property, conveyed it to two partnerships which have commenced development of the property; that as of 30 November 1972 a one-fourth undivided interest in the Roberson property had a fair market value of $250,000; that prior to 30 November 1972 plaintiff requested of defendant that water and sewer utilities be extended to the Roberson property and defendant thereupon expended $46,497.51 causing the cost basis of said property to be increased to $102,685.10 as opposed to the amount specified in the contract; and that a reasonable period in which to accomplish the objectives of the contract had not expired as of 30 November 1972 and therefore defendant's notice of termination was not reasonable. The court thereupon concluded that the cost basis of the Crowell-Little property is the amount specified in the contract and defendant is not entitled to augment it by taxes and interest paid to carry the property but may deduct its selling expense from the gross proceeds so that plaintiff is entitled to receive $74,655.88 of the net sale proceeds; that defendant's failure to unconditionally tender such amount to plaintiff constituted a wilful conversion of plaintiff's share of

the proceeds and as a result plaintiff is entitled to receive $5,968.00 as punitive damages; that defendant is entitled to augment its cost basis for the Roberson property by the amount expended for water and sewer services; and that defendant breached the contract by conveying the Roberson property to two partnerships and plaintiff is therefore entitled to damages equal to one-half the difference between the augmented cost basis and the lesser of (a) the fair market value or (b) the contract minimum sales price on the date of the breach, which formula entitles plaintiff to $73,657.45 (one-half fair market value — $250,000 minus augmented cost basis — $102,685.10). Both parties appeal.

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson, by Josiah S. Murray III, for plaintiff.*

*Murdock, Jarvis, Johnson & LaBarre, by Jerry L. Jarvis, for defendant.*

MARTIN, Judge.

## DEFENDANT'S APPEAL

Defendant contends that since the contract of 23 August 1968 fixed no time for its duration it was subject to termination by either party upon the giving of reasonable notice, and that 60 days notice of termination after the expiration of 4 years and 3 months from the execution of the contract was reasonable.

[1] North Carolina follows the generally accepted view that a contract of indefinite duration may be terminated by either party on giving reasonable notice. See *Scarborough v. Adams,* 264 N.C. 631, 142 S.E. 2d 608 (1965); *Rubber Co. v. Distributors,* 253 N.C. 459, 117 S.E. 2d 479 (1960); *Fulghum v. Selma* and *Griffis v. Selma,* 238 N.C. 100, 76 S.E. 2d 368 (1953); *Superior Foods v. Super Markets,* 24 N.C. App. 447, 210 S.E. 2d 900 (1975), *aff'd.* 288 N.C. 213, 217 S.E. 2d 566 (1975); *City of Gastonia v. Power Company,* 19 N.C. App. 315, 199 S.E. 2d 27 (1973). To avoid injustice, however, this rule is subject to the qualification that such a contract may not be unilaterally terminated until it has been in effect for a reasonable time, taking into account the purposes the parties intended to accomplish. *Scarborough v. Adams, supra; City of Gastonia v. Power Co., supra; Atkinson v. Wilkerson,* 10 N.C. App. 643, 179 S.E. 2d 872 (1971).

The North Carolina position is set forth in 2 Strong, N. C. Index 2d, Contracts, § 17, p. 322, as follows:

"As a general rule, where no time is fixed for the termination of a contract it will continue for a reasonable time, taking into account the purposes that the parties intended to accomplish; and where the duration of the contract cannot be implied from its nature and the circumstances surrounding its execution, the contract is terminable at will by either party on reasonable notice to the other."

[2, 3] The question of whether there was a "reasonable time" under the circumstances of the instant case on appeal was a question of fact under the test stated in *Hardee's v. Hicks*, 5 N.C. App. 595, 599, 169 S.E. 2d 70, 73 (1969). In that case, the Court said, " . . . if different inferences may be drawn, or circumstances are numerous and complicated, and such that a definite legal rule cannot be applied to them, then the matter [of what is a reasonable time] should be submitted to the jury. It is only when the facts are undisputed and different inferences cannot be reasonably drawn from them, that the question ever becomes one of law. (Citations omitted.)" In the case now before this Court, the trial judge, sitting without a jury and as trier of all facts, found as a fact that "[a] reasonable period of time in which to accomplish or to expect to accomplish the objectives of the contract and agreement of August 23, 1968, had not expired as of November 30, 1972 . . . " ; the trial judge further found as an ultimate finding of fact and conclusion of law " . . . that the aforesaid letter notice of intended termination was legally ineffective to terminate the subject contract and agreement of August 23, 1968, with reference to the Roberson property and Eastgate Shopping Center property and that a period of four years and three months was not a reasonable period, in view of the difficulty of marketing these particular properties, within which the parties to the subject contract and agreement of August 23, 1968 could reasonably expect to accomplish the goals and purposes of the contract."

The "difficulty of marketing these particular properties" was a circumstance which would allow for different inferences to be drawn. As to what was or was not a reasonable period of time, we agree that the finding by the trial court "that a reasonable period of time . . . had not expired . . . " is supported by the evidence.

[4]  The defendant next contends the trial court erred in concluding as a matter of law that defendant was not entitled to augment its cost basis for the Crowell-Little property by either capitalization of interest expense or by increment adjustment for payment of ad valorem taxes. Defendant argues that the contract reasonably implies that defendant wou'd be able to recover from sale proceeds costs unavoidably incurred to maintain the property; otherwise, defendant's share of profits would be systematically diminished with the mere passage of time.

It is elementary that when a contract is plain and unambiguous the construction of the agreement is a matter of law for the court. See 2 Strong, N. C. Index 2d, Contracts, § 12, p. 311. This Court summarized the applicable law on this point as follows:

> "In the case of *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539, it is stated: 'When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit. (Citation omitted.) It is the province of the courts to contrue and not to make contracts for the parties. (Citations omitted.) The terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense. (Citation omitted.)'" *Peaseley v. Coke Co.*, 12 N.C. App. 226, 231, 182 S.E. 2d 810, 813 (1971).

In the instant case, the contract provides that " . . . Alderman will first recover its cost basis from the proceeds of each individual sale and any proceeds over and above said cost basis on said individual sale shall be equally divided between Alderman and East Coast . . . . " In addition, paragraph 2 of the contract clearly delineates the cost basis of the Crowell-Little property as $150,388.24. The language of the contract is clear. The defendant cannot after the fact insert into the contract a provision for augmentation of cost basis when the express language of the contract does not so provide and the law does not imply such a provision. Defendant's second assignment of error is overruled.

By its third assignment of error defendant contends the plaintiff was not entitled to punitive damages by reason of

defendant's failure to pay money due plaintiff pursuant to the terms of their contract. The court found:

> "The failure of the Defendant to make an unconditional tender to the Plaintiff of a share of the net sale proceeds realized and received by the Defendant with respect to the sale of the Crowell-Little Real Estate Co. property, at least to the extent of thirty-one thousand one hundred twenty-eight and 02/100 dollars ($31,128.02) based upon facts admitted by the Defendant, and the failure of the Defendant to distribute and pay over to the Plaintiff the sum of seventy-four thousand six hundred fifty-five and 88/100 dollars ($74,655.88) based upon facts found by the Court, constituted a conversion by the Defendant of Plaintiff's share in the net sale proceeds realized and received by the Defendant with respect to the sale of the Crowell-Little Real Estate Co. property."

Defendant contends the plaintiff is not entitled to punitive damages for conversion because plaintiff failed to allege or to offer any evidence establishing on the part of defendant any malice, gross or wilful wrong, or conduct evincing a reckless disregard of plaintiff's rights and that while the court below concluded that defendant's conduct was of such nature, the court made no findings of fact to support such a conclusion. We agree.

[5] Punitive damages may be awarded when an act is done with wilfulness or under circumstances of rudeness, oppression, or reckless and wanton disregard of the plaintiff's rights. See *Clouse v. Motors Inc.,* 14 N.C. App. 117, 187 S.E. 2d 398 (1972). While it is not required that punitive damages be specially pleaded by that name in the complaint, it is necessary that the plaintiff allege " . . . facts or elements showing the aggravating circumstances which would justify the award of punitive damages, for instance, actual malice, or oppression, or gross and willful wrong or negligence, or a reckless and wanton disregard of plaintiff's rights. (Citations omitted.) " *Cook v. Lanier,* 267 N.C. 166, 172, 147 S.E. 2d 910, 915 (1966). Moreover, "[p]unitive or exemplary damages are never awarded on the ground that the plaintiff has a right thereto. (Citation omitted.) With the exception of a breach of promise to marry, punitive damages are not given for breach of contract. (Citations omitted.) " *King v. Insurance Co.,* 273 N.C. 396, 398, 159 S.E. 2d 891, 893 (1968).

Development Corp. v. Alderman-250 Corp.

In 25 C.J.S., Damages, § 120, p. 1126, it is said:

"As a general rule, in the absence of statutory authority, exemplary damages are not recoverable in actions for the breach of contracts, irrespective of the motive on the part of defendant which prompted the breach. . . . No more can be recovered as damages than will fully compensate the party injured . . . .

"Thus where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages on proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of, the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort."

[6] The only finding that has any bearing on this issue relates to the tender by the defendant of the sum it conceded to be due the plaintiff on 30 November 1972. From this finding, the trial court proceeded to conclude that since the tender was not unconditional the tender constituted a conversion of the sum due. This finding, considered in light of the evidence presented, was not sufficient to support the trial court's conclusion that the defendant's actions amounted to wilful and malicious conduct entitling plaintiff to punitive damages.

We agree with the court's findings that defendant was unable to justify its asserted claim to an augmented cost basis in the Crowell-Little property by reference to any contractual provision pertinent to the question and that tender of its check with the endorsed legend, if accepted under such conditions would amount to a full and complete discharge of the debt. However, this does not amount to evidence of insult, indignity, malice, oppression or bad motive. We do not think the law requires that punishment should be meted out in this action. Defendant's third assignment of error is sustained and that part of the judgment awarding plaintiff punitive damages is vacated.

## PLAINTIFF'S APPEAL

**[7]** Plaintiff assigns as error the action of the court in allowing for augmentation of defendant's contract cost basis in and with respect to the Roberson property.

The contract provides: "It is understood by and between the parties hereto that any future development costs mutually agreed upon by the parties hereto which are expended on said property by Alderman shall be added to Alderman's cost basis and also will be added to the minimum sales figure set forth in paragraph 2."

The contract does not specify any particular form of agreement for expenditure of development costs, and it does not specify that the amount of such costs must be mutually agreed upon prior to the expenditure. The plaintiff does not contend that the expenses incurred by the defendant to bring water and sewer facilities to the site were not incurred, were unreasonable, or were unnecessary. The plaintiff does deny that it agreed to the extension of water and sewer utilities to the premises.

The trial court found as a fact that:

"[p]rior to November 30, 1972, the defendant expended the sum of forty-six thousand four hundred ninety-seven and 51/100 dollars ($46,497.51) in development costs incident to the extension and installment of water and sewer facilities for the Roberson property . . . and . . . that Alderman-250 Corporation had a cost basis in the Roberson Property on November 30, 1972 in the amount of one hundred two thousand six hundred eighty-five and 10/100 dollars ($102,685.10)."

Based upon these findings of fact, the trial court made the ultimate findings of fact and conclusions of law to the effect that "Plaintiff mutually agreed with Defendant for Defendant to incur a development cost with respect to the Roberson property in the amount of forty-six thousand four hundred ninety-seven and 51/100 dollars ($46,497.51) for the extension of water and sewer service lines to the Roberson property," and that "Defendant is entitled to augment its contract cost basis for the Roberson property, such contract cost basis being fifty-six thousand one hundred eighty-seven and 59/100 dollars ($56,187.59) . . . by forty-six thousand four hundred

ninety-seven and 51/100 dollars ($46,497.51) the amount of the development cost mutually agreed to by the plaintiff and the defendant with respect to the Roberson property. . . ."

The principle that a trial court's findings of fact are conclusive if supported by any competent evidence and that a judgment supported by such findings must be affirmed even though there is evidence contra is well established. In *Vaughn v. Tyson,* 14 N.C. App. 548, 550, 188 S.E. 2d 614, 616 (1972), this Court stated that:

> "In a non-jury trial the findings by the court have the force and effect of a verdict of a jury and are conclusive on appeal if supported by any competent evidence notwithstanding that there is evidence contra which would sustain findings to the contrary. (Citations omitted.)"

The evidence submitted in the instant case is plenary to support the findings of fact and conclusion of law based thereon. This assignment of error is overruled.

Plaintiff next assigns as error the action of the court in finding as a fact and concluding as a matter of law that, as of November 30, 1972, a one-fourth undivided interest in the Roberson property had a fair market value of $250,000.

Upon careful review we think and so hold that there was competent evidence as to the fair market value of the Roberson property upon which the trial court could arrive at a value of $250,000.

> "When a trial by jury is waived, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge. (Citation omitted.)" *Repair Co. v. Morris & Associates,* 2 N.C. App. 72, 75, 162 S.E. 2d 611, 613 (1968). This assignment of error is overruled.

[8]  Finally, plaintiff contends the measure of damages awarded with respect to the Roberson property was incorrect and should have been one-half (1/2) of the difference between defendant's contract cost basis and the greater of (a) the amount for which the property could have been sold in the exercise of reasonable care and judgment or (b) the contract minimum sales price, because plaintiff is entitled to be put in the same position as if the contract had been performed by defendant.

The formula adopted by the trial court is predicated upon a determination of the fair market value of the Roberson property as of the date defendant repudiated its agreement with the plaintiff, and this formula was disapproved and rejected in *Newby v. Realty Co.*, 180 N.C. 51, 103 S.E. 909 (1920) ; and in *Cook v. Lawson*, 3 N.C. App. 104, 164 S.E. 2d 29 (1968). The correct formulation of remedy for recovery of damages is bottomed upon the premise that the plaintiff is entitled to be put in the same position as it would have been if the contract had been performed, and to recover what has been lost by non-performance, rather than the difference between the option price or cost basis and the market value as of the time of repudiation. See *Newby v. Realty Co., supra,* and *Cook v. Lawson, supra.*

However, plaintiff concedes that in its complaint it prays for a presumed sale at the fair market value on the date of breach. The damages awarded were those requested by plaintiff in its complaint. No evidence of the amount for which the property could have been sold was presented at the trial and the plaintiff's failure to object to the measure of damages at trial constitutes invited error. See *Smith v. Simpson*, 260 N.C. 601, 133 S.E. 2d 474 (1963) ; *In Re Will of McGowan*, 235 N.C. 404, 70 S.E. 2d 189 (1952) ; *Johnson v. Sidbury*, 226 N.C. 345, 38 S.E. 2d 82 (1946). Plaintiff's assignment of error is overruled.

Defendant's Appeal—Affirmed in part and reversed in part.

Plaintiff's Appeal—Affirmed.

Judges BRITT and PARKER concur.