IN RE BRANDON LEE LaRUE, DANIEL LEE LaRUE, IVA GEAN LaRUE

No. 9323DC180

(Filed 1 March 1994)

1. **Judges, Justices, and Magistrates § 26 (NCI4th)— termination of parental rights—previous recommendation by judge that termination be pursued—recusal denied**

    The trial judge in a termination of parental rights proceeding did not err by failing to recuse himself where he had conducted an earlier review hearing, concluded that the juveniles should remain in the custody of DSS, and recommended that DSS pursue termination of parental rights. Canon 3(C)(1) of the Code of Judicial Conduct states that a judge should disqualify himself where he has a personal bias or prejudice or personal knowledge of disputed evidentiary facts. Conducting a review hearing pursuant to N.C.G.S. § 7A-657 and concluding that the children should remain with DSS is not sufficient to support a finding of bias or prejudice; the knowledge of evidentiary facts gained by the trial judge from the earlier proceeding does not require disqualification; and the court is required at a review hearing to evaluate when and if termination of parental rights should be considered.

    **Am Jur 2d, Judges §§ 86 et seq.**

2. **Parent and Child § 109 (NCI4th)— termination of parental rights—mental retardation of parents—borderline IQ—evidence not sufficient**

    The evidence in a termination of parental rights hearing did not support the finding that the parents were mentally retarded within the meaning of N.C.G.S. § 7A-289.32(7). Although the parents had IQs of 71 and 72, the record does not reflect that they exhibited significant defects in adaptive behavior and neither psychologist was willing to classify the parents as retarded, instead using the label "borderline." The action

was remanded for a hearing on a petition to terminate for neglect, which had not been addressed.

**Am Jur 2d, Parent and Child §§ 34, 35.**

Appeal by respondents from order entered 17 November 1992 in Alleghany County District Court by Judge Edgar B. Gregory. Heard in the Court of Appeals 4 January 1994.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane Rankin Thompson, for petitioner-appellee Alleghany County Department of Social Services.*

*Doughton & Marshall, by Wm. Bynum Marshall, for respondent-appellants.*

*Edmund I. Adams, Guardian ad Litem, for Brandon Lee LaRue, Daniel Lee LaRue, and Iva Gean LaRue.*

GREENE, Judge.

Ernest, born 16 July 1949, and Dorothy LaRue, born 4 March 1954, (the LaRues), the parents of three children, appeal from an order terminating their parental rights under N.C. Gen. Stat. § 7A-289.32(7) (Supp. 1993) based on their "incapab[ability] as a result of their mental retardation of providing for the proper care and supervision of their children."

Alleghany County Department of Social Services (DSS) became involved with the LaRues in March 1982 and first filed a petition alleging neglect on 29 July 1991. Pursuant to that petition, a hearing was conducted by District Court Judge Michael E. Helms, and the children were adjudicated, on 3 September 1991, neglected within the meaning of N.C. Gen. Stat. § 7A-517(21). Judge Helms placed custody of the children with DSS. The matter came on for review before District Court Judge Edgar B. Gregory on 4 February 1992. Pursuant to that hearing, Judge Gregory entered an order concluding that "it would be in the best interest of all three juveniles to continue their legal and physical custody" with DSS. Judge Gregory also "recommended that the DSS pursue Termination of Parental Rights under G.S. 7A-289.32(2) [neglect] to the end that the three juveniles can be adopted." DSS subsequently filed a petition to terminate the LaRues' parental rights based on neglect. At the hearing on this petition, the LaRues moved for Judge Gregory to recuse himself based on his earlier recommen-

**IN RE LaRUE**

[113 N.C. App. 807 (1994)]

dation that DSS pursue termination of parental rights. On 18 May 1992, Judge Gregory entered an order denying the motion to recuse. DSS subsequently filed an additional petition to terminate the LaRues' parental rights alleging as the basis for the petition that the LaRues were mentally retarded and unable to care for the children. N.C.G.S. § 7A-289.32(7).

The petition to terminate based on Section 7A-289.32(7) was heard in the trial court on 6 October 1992. The evidence before the court reveals that David L. Tate (Tate), a clinical psychologist, evaluated the intellectual abilities of the LaRues in November 1990. Dorothy LaRue had a full scale IQ of 71 and Ernest LaRue had a full scale IQ of 72. Tate characterized them as being in the "borderline range of mental retardation." Dr. Phillip Batten (Dr. Batten), an expert in psychology, confirmed Tate's earlier IQ findings and based on his interaction with the LaRues, classified them as falling "into the category of borderline functioning." He testified that the LaRues suffered from no organic brain syndrome or other degenerative mental condition, and there was no evidence they suffered from any mental illness.

---

The issues presented are whether the trial judge erred in (I) denying the LaRues' motion for him to recuse himself from the hearing to terminate their parental rights; and (II) finding and concluding that the LaRues are mentally retarded within the meaning of N.C. Gen. Stat. § 7A-289.32(7).

I

[1] The LaRues first argue that Judge Gregory erred in failing to recuse himself in the action to terminate their parental rights because the record reveals that he had "a personal bias or prejudice" concerning them. We disagree.

The Code of Judicial Conduct does state that a judge "should disqualify himself . . . where . . . [h]e has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings." Code of Judicial Conduct Canon 3(C)(1) (1993). "The burden is on the party moving for recusal to 'demonstrate objectively that grounds for disqualification actually exist.'" *State v. Kennedy*, 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993). The LaRues have not met their burden in this case. The only evidence presented is that Judge Gregory, some eight

months earlier, had conducted a review hearing pursuant to N.C. Gen. Stat. § 7A-657 and had concluded that the three children should remain with DSS. This is not sufficient to support a finding of bias or prejudice. Furthermore, the knowledge of "evidentiary facts" gained by the trial judge from the earlier proceedings does not require disqualification. We also reject the LaRues' argument that Judge Gregory should be disqualified because he "recommended" that DSS pursue a termination of parental rights proceeding against them. Indeed, the trial court is required at a review hearing to evaluate "[w]hen and if termination of parental rights should be considered." N.C. Gen. Stat. § 7A-657(c)(6) (1989). Therefore, Judge Gregory did not err in denying the LaRues' motion for recusal.

II

[2] The LaRues next argue that the evidence does not support that they are mentally retarded within the meaning of N.C. Gen. Stat. § 7A-289.32(7). We agree.

A district court can terminate parental rights if the petitioner shows by clear, cogent, and convincing evidence:

> (7) That the parent is incapable as a result of mental retardation, mental illness, organic brain syndrome, or any other degenerative mental condition of providing for the proper care and supervision of the child, such that the child is a dependent child within the meaning of G.S. 7A-517(13), and that there is a reasonable probability that such incapability will continue throughout the minority of the child.

N.C.G.S. § 7A-289.32(7) (Supp. 1993). In this case, the testimony is that the LaRues do not suffer from mental illness, organic brain syndrome, or any other degenerative mental condition. The only question is whether they are mentally retarded. N.C. Gen. Stat. § 7A-289.32(7) does not define the term "mental retardation." Because, however, the language of the "statute is clear and is not ambiguous" it must be "implemented according to the plain meaning of its terms." *Hyler v. GTE Products Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993). Dictionaries are properly used to ascertain the "plain meaning" or the "natural and ordinary meaning" of words used in a statute. *Hatteras Yacht Co. v. High*, 265 N.C. 653, 657, 144 S.E.2d 821, 824 (1965); *Edwards v. University of North Carolina*, 107 N.C. App. 606, 609, 421 S.E.2d 383, 385, *disc. rev. denied*, 333 N.C. 167, 424 S.E.2d 909 (1992). Definitions of the word or

term contained in other statutes, although not controlling, "throw some light upon . . . [its] normal usage." *Hatteras*, 265 N.C. at 657, 144 S.E.2d at 824.

A medical dictionary defines mental retardation as follows:

> Below normal intellectual function that has its cause or onset during the developmental period and usually in the first years after birth. There is impaired learning, social adjustment, and maturation. The causes may be but do not have to be genetic. . . . The degree of intellectual impairment is classed on the basis of the Wechsler IQ scale as follows: 1. Mild, IQ 69-55. These children are educable. 2. Moderate, IQ 54-40. These children are trainable. 3. Severe, IQ 39-25. 4. Profound, IQ below 25.

*Taber's Cyclopedic Medical Dictionary* 1108 (16th ed. 1989) (*Taber's*). The North Carolina Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985 defines mental retardation as "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before age 22." N.C.G.S. § 122C-3(22) (1993). The American Association on Mental Deficiency refers to mental retardation as "sub-average general intellectual functioning which originated during the developmental period and is associated with impairment in adaptive behavior." *Matter of Grady*, 405 A.2d 851, 855 (N.J. 1979); *see also North Carolina Ass'n for Retarded Children v. State of North Carolina*, 420 F. Supp. 451, 453 (1976). The American Psychiatric Association's diagnostic criteria for mental retardation provides that mental retardation is (1) significantly subaverage general intellectual functioning, (2) significant impairments in adaptive functioning, and (3) onset before the age of 18. *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* at 31-32 (3d ed. 1987) (DSM-III).

Having reviewed these various definitions, which are very similar, we believe the definition of mental retardation adopted by our legislature in N.C. Gen. Stat. § 122C-3(22) represents the plain meaning of the term "mental retardation" used in N.C. Gen. Stat. § 7A-289.32(7). Applying this definition to the evidence in this case, there is not clear, cogent, and convincing evidence of mental retardation of either parent. "Significantly subaverage general intellectual functioning" is generally manifested by an IQ score of less than 70. Nonetheless, IQ scores of 71 and 72, as received

by the LaRues, can represent subaverage general intellectual functioning if the persons "exhibit significant defects in adaptive behavior." *DSM-III* at 28 ("[t]reating the IQ with some flexibility permits inclusion in the Mental Retardation category of people with IQs somewhat higher than 70"). This record does not reflect that the LaRues exhibited significant defects in adaptive behavior: neither psychologist was willing to classify the LaRues as mentally retarded, instead using the label "borderline," defined as "a patient who has some of the requirements for a definite diagnosis but not enough for certainty." *Taber's* at 236. Thus, the psychologists necessarily were unable to conclude that the LaRues exhibited significant defects in adaptive behavior. The trial court therefore erred in terminating their parental rights under N.C. Gen. Stat. § 7A-289.32(7).

Because the record reveals that DSS's petition to terminate parental rights for neglect under Section 7A-289.32(2) filed 24 February 1992 was never addressed or dismissed, we remand for a hearing on that petition.

Affirmed in part, reversed in part, and remanded.

Judges COZORT and WYNN concur.