LORRAINE K. DOYLE, Plaintiff v. ASHEVILLE ORTHOPAEDIC ASSOCIATES, P.A., Defendant

No. COA01-159

(Filed 28 December 2001)

**Employer and Employee— employment contract—termination provision—constructive discharge**

The trial court erred in a breach of contract action by allowing recovery for plaintiff doctor for constructive discharge from employment based on the termination provision of plaintiff's employment contract, because: (1) the jury found that neither party breached the employment contract, and the evidence does not show that defendant employer deliberately made plaintiff's working conditions intolerable; (2) plaintiff does not allege in her complaint that she was constructively terminated based on intolerable working conditions, nor does she set forth any instances that would support stating that she was terminated based on intolerable working conditions; and (3) there is no evidence that the alleged conditions were deliberately created in an attempt to force plaintiff to terminate her employment.

DOYLE v. ASHEVILLE ORTHOPAEDIC ASSOCS., P.A.

[148 N.C. App. 173 (2001)]

Appeal by defendant from judgment entered 11 April 2000 and order entered 11 May 2000 by Judge James U. Downs in Superior Court, Buncombe County. Heard in the Court of Appeals 5 December 2001.

*Adams Hendon Carson Crow & Saenger, P.A., by George W. Saenger and Joy Gragg, for plaintiff-appellee.*

*McGuire, Wood & Bissette, P.A., by Joseph P. McGuire, for defendant-appellant.*

WYNN, Judge.

In this appeal Asheville Orthopaedic Associates, P.A., argues that the trial court erred in submitting issues to the jury and allowing recovery to Dr. Lorraine K. Doyle for constructive discharge from employment. Asheville Orthopaedics correctly points out that North Carolina has not explicitly recognized constructive discharge in the context of employment as an independent basis for recovery. Indeed, in *Wagoner v. Elkin City Schools' Board of Education* this Court held:

Assuming that plaintiff was wrongfully constructively discharged, she is nonetheless not entitled to assert the tort of wrongful discharge because the tort of wrongful discharge arises only in the context of employees at will. *See Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989); *Sides*, 74 N.C. App. 331, 328 S.E.2d 818. Breach of contract is the proper claim for a wrongful discharged employee who is employed for a definite term or an employee subject to discharge only for "just cause."

113 N.C. App. 579, 588, 440 S.E.2d 119, 125, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994).

However, Dr. Doyle responds that she did not claim damages arising under the independent action of constructive discharge based on a violation of public policy which applies to employees at will. Rather, Dr. Doyle asserts that her claim arises under her employment contract with Asheville Orthopaedic. She points out that her employment contract provided for damages to be paid to her in the event that Asheville Orthopaedic terminated her involuntarily. She alleges that despite the fact that she resigned from her employment, her resignation was procured by Asheville Orthopaedic's conduct which amounted to constructive discharge.

DOYLE v. ASHEVILLE ORTHOPAEDIC ASSOCS., P.A.

[148 N.C. App. 173 (2001)]

Dr. Doyle is a board certified orthopaedic surgeon, who after signing an employment contract with Asheville Orthopaedics started working on 3 October 1988. The employment contract provided that Dr. Doyle would receive basic compensation in the amount of $80,000 during her first contract year, the same basic compensation of $80,000 plus one-half of her productivity during her second contract year, and compensation based on her productivity during her third and subsequent contract years, with her compensation based on productivity to "be calculated in the same manner as is applicable to all other physician employees of the Employer."

Regarding termination, the employment contract under paragraph 12 a. provided that:

The Employee may terminate this Contract only after having given a preliminary written notice to terminate twelve (12) months before the effective termination date, followed by a final written resignation six (6) months before said termination date. Subject to paragraph 12 c., the Employer may terminate this Contract only after having given written notice at least six (6) months before the effective termination date. The Employer will not terminate this Agreement unless such action has been approved by a majority vote of all members of the Board of Directors who are then actively practicing medicine for the Employer.

The Contract of Employment further provided that:

Upon termination pursuant to paragraph 12 a., Employee shall be paid only: (i) the Basic Benefits set forth herein, reduced by 1/25 for each year of service with the Employer less than twenty-five (25) years; and (ii) his Basic Compensation without any further Productivity Compensation.

At a meeting on 11 October 1995, the Board of Directors for Asheville Orthopaedics considered Dr. Doyle's deficit, how she could repay that deficit and the viability of her continuing in the practice. After the meeting, Linda Stein Murphy, the business manager, informed Dr. Doyle that the Board of Directors had decided that it could not go on paying someone who was not producing. Later that same day, Ms. Murphy met with two of the partner doctors, who decided that Dr. Doyle would not receive a paycheck or disability payment; Medical Mutual would be called about the cost of tail coverage for Dr. Doyle, which is the amount required to be paid to cover a doc-

tor who leaves a practice in the event that any claims arise subsequent to the doctor's departure; Dr. Doyle should cancel some of her vacation and not attend a professional meeting in February; and the credit card limit for all of the physicians would be reduced from $5,000 to $500.

The next day, Ms. Murphy met with Dr. Doyle and told her that she would not receive any pay. After discussing with Ms. Murphy whether there would be a problem if she left at the end of December, Dr. Doyle sent a letter dated 30 November 1995 stating that she intended to withdraw from the partnership and her last day would be 31 December 1995.

Following a trial, the jury considered and decided on the following issues:

1. Did the defendant breach the employment agreement?

ANSWER: NO

2. What answer of damages is the plaintiff entitled to recover from the defendant?

ANSWER: _____

3. Did the defendant constructively terminate the employment of the plaintiff?

ANSWER: YES

4. What amount of damages, if any is the plaintiff entitled to recover from the defendant?

ANSWER: $14,752

5. Did the plaintiff breach the employment contract?

ANSWER: NO

6. What amount of damages is the defendant entitled to recover from the plaintiff?

ANSWER: _____

Accordingly, the trial court entered judgment on the jury's finding of constructive discharge in the amount of $14,447.30, plus prejudgment interest from 1 January 1996 and court costs.

On appeal, Dr. Doyle disavows that she seeks relief under a claim of constructive discharge in violation of public policy which arises

only in the context of employees at will. She asserts instead that her claim of constructive discharge arose in the context of deciding whether she was entitled to termination payments under the contract. We recognize the viability of her claim in the context of interpreting whether constructive termination by her employer triggered the termination payment provision of the employment contract.

In general, evidence establishing constructive discharge "must demonstrate that the employer deliberately made working conditions intolerable and thereby forced [the plaintiff ] to quit." *Graham v. Hardee's Food System, Inc.*, 121 N.C. App. 382, 385, 465 S.E.2d 558 (1996) (citing *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992)). "Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.' " *Id.* (Citations omitted).

In this case, the jury found that neither Asheville Orthopaedics nor Dr. Doyle breached the employment contract. Thus, to show that her employer constructively discharged her and thereby triggered the payment provision of the employment contract, Dr. Doyle must point to evidence, other than that showing a breach of contract, which demonstrates that Asheville Orthopaedics deliberately made her working conditions intolerable.

The record shows that Dr. Doyle's evidence of constructive discharge consisted of her allegations that she received limited referrals of hand patients from Asheville Orthopaedics' other physicians. However, the record also shows that Dr. Doyle did receive some hand patient referrals and was offered to serve as back-up on call. Dr. Doyle also points to Asheville Orthopaedics' adoption of a different compensation formula in November 1994 which allocated overhead in a detrimental impact on her income. However, this change occurred during a period when Asheville Orthopaedics experienced a financial crunch and considered ways to hold costs down and encourage production. Additionally, Dr. Doyle, a board member, voted on the modified compensation formula. Also, the record shows that Asheville Orthopaedics approved Dr. Doyle as a shareholder and in later years elected her to serve in various offices including secretary, treasurer and vice-president. This evidence falls short of showing that . Asheville Orthopaedics deliberately made Dr. Doyle's working conditions intolerable.

Moreover, we note that in her Complaint, Dr. Doyle does not allege that she was constructively terminated because of intolerable

working conditions nor does she set forth any instances that would support stating that she was terminated because of intolerable working conditions.

After a careful review of the record, we can find no evidence that the alleged conditions were deliberately created in an attempt to force Dr. Doyle to terminate her employment. In the absence of facts, other than those showing a breach of contract, to support Dr. Doyle's claim for payment under the termination provision of her employment contract that she was constructively discharged, we must reverse the judgment.

Reversed.

Judges WALKER and THOMAS concur.