RICHARD A. FRANCO, JR., PLAINTIFF v. LIPOSCIENCE, INC., DEFENDANT

No. COA08-785

(Filed 19 May 2009)

**1. Employer and Employee— at-will—retaliation letter—absence of consideration**

The trial court did not err by granting summary judgment in favor of defendant company on plaintiff's breach of contract claim even though plaintiff contends the promises in a retaliation letter formed a contract precluding defendant's right to terminate his employment in retaliation for the actions of plaintiff's father because: (1) there was no consideration to form a contract when the two promises in the retaliation letter constituted additional obligations on the part of defendant; the letter did not increase or diminish plaintiff's pay, duties, rights, or anything else that could be deemed consideration flowing from plaintiff to defendant; and mere continued employment by the employee is insufficient consideration; (2) there was no evidence showing that plaintiff's father negotiated the retaliation letter for his son's benefit, the promises in the retaliation letter were not incorporated and made binding in the father's severance agreement, and thus plaintiff cannot enforce the promises in the letter as a third-party beneficiary; and (3) the principles from debtor cases such as forbearance were inapplicable to defeat the application of the at-will employment doctrine, and the holding does not affect the rights of plaintiff's father as he is not a party to this action, nor does it appear he has sought to enforce his rights in another action.

**2. Judges— motions for new trial and recusal—failure to show trial judge disqualified**

The trial court did not err by denying plaintiff's combined motions for a new trial and to recuse the trial judge on the ground

that the judge's father and defendant's CEO were once commonly affiliated with the University of North Carolina because, given the remote and arm's length affiliation defendant's CEO had with the trial judge's father, plaintiff did not carry his burden to demonstrate objectively that grounds for the trial judge's recusal existed.

Judge ERVIN dissenting.

Appeal by plaintiff from order and judgment entered 9 August 2007 by Judge Allen Baddour in Superior Court, Wake County. Heard in the Court of Appeals 10 February 2009.

James, McElroy & Diehl, P.A., by Richard B. Fennell & Preston O. Odom, III, for plaintiff.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Gregory P. McGuire & Phillip J. Strach, for defendant.

WYNN, Judge.

North Carolina embraces a strong presumption of at-will employment unless the employment relationship fits within one of three recognized exceptions—the pertinent exception here being an alleged contractual relationship.[1] In this appeal, Plaintiff Richard A. Franco, Jr. argues that the evidence established that he had a contract with Defendant Liposcience, Inc. that barred his termination as an at-will employee. Because the record shows there was insufficient consideration to form a binding contract, we affirm the trial court's grant of directed verdict in favor of Liposcience on Franco, Jr.'s breach of contract claim.

In September 2002, Liposcience, a manufacturer and marketer of medical technology products, hired Franco, Jr. to serve as Vice President of Marketing. At that time, Franco, Jr.'s father—Richard A. Franco, Sr.—served as Chairman of Liposcience's Board of Directors. However, Liposcience's Board of Directors voted to remove Franco, Sr. as Chairman of the Board of Directors in October 2002. Thereafter, severance negotiations resulted in the drafting of three documents, each dated 13 December 2002.

First, a document titled "Severance and Release Agreement" was signed by Franco, Sr. and Dr. Charles A. Sanders, Liposcience's

---

1. Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331-32, 493 S.E.2d 420, 422 (1997).

incoming Chairman of the Board of Directors. Under the Severance and Release Agreement, the parties agreed that Franco, Sr. would resign as Chairman of the Board of Directors, but would remain a voting member of the Board of Directors and a shareholder.

Second, Dr. Sanders signed a letter as "Chairman of the Board of Directors of Liposcience, Inc." that was addressed to Franco, Jr. and copied to Franco, Sr. ("Retaliation Letter"). The Retaliation Letter stated, in relevant part:

First of all, this letter will signify my commitment to you that there will be no retaliation against you by the Company in connection with your father's resignation. For the purposes of this letter, the term "retaliation" shall mean to take adverse employment action against you based upon your relationship with Richard Franco, Sr., and not for any legitimate business reason.

In addition, from and after the date of this letter and for a period of two years thereafter, no employment action will be taken by Liposcience that will have any material adverse effect on the terms and conditions of your employment without my prior express written approval, of which you will receive a copy. Such employment actions include any material reduction in your compensation and benefits; any material diminution of your title, role and responsibilities with the Company; and any material disciplinary action, up to and including the termination of your employment. Nothing in this letter agreement shall diminish any other rights that you may have relative to your employment with the Company.

Third, a letter addressed to Franco, Jr. (signed by Executive Vice President Lucy Martindale and Vice President, General Counsel, and Secretary Timothy J. Williams), stated that any Chairman of the Board of Directors succeeding Dr. Sanders would be bound to the conditions in the Retaliation Letter.

During 2003, Liposcience made a series of internal restructuring moves to make the company more efficient and to reduce payroll expenses. By February 2003, Liposcience had hired Richard Brajer as Chief Executive Officer, and shortly thereafter, hired Richard Pinnola as Chief Operating Officer. By December 2003, Mr. Brajer and Mr. Pinnola discussed eliminating the Vice President of Marketing and other lower-level positions to create a Vice President of Sales posi-

tion, as Liposcience shifted its focus from marketing to product sales. That decision was finalized and executed on 24 February 2004, resulting in Franco, Jr.'s termination.

However, under Franco, Jr.'s version of the events leading to his termination, a "quid-pro-quo" pattern of retaliatory adverse employment actions corresponded to each conflict Franco, Sr. had with Liposcience executives. Specifically, Franco, Jr. alleged that before he was terminated, the following series of events occurred: 1) in March and April 2003, Franco, Sr. made several accountability requests of CEO Brajer; in response, Franco, Jr. received a critical voice message from CEO Brajer, and had his responsibilities and approved personal days reduced; 2) in June 2003, Franco, Sr. requested a full performance review of CEO Brajer; in response, Franco, Jr. received a critical performance review outside the normal review cycle; 3) in August 2003, Franco, Sr. criticized and requested a full performance review of CEO Brajer; in response, Franco, Jr.'s approved vacation time was reduced; 4) in September and October 2003, Franco, Sr. requested and was denied Liposcience sales information, was suspected of authoring an anonymous email criticizing shareholder communications, and ultimately resigned from the Board of Directors; in response, Franco, Jr.'s responsibilities were reduced further despite positive reviews.

After his termination, Franco, Jr. brought this action asserting claims for breach of contract, wrongful discharge in violation of North Carolina public policy, unfair and deceptive trade practices, and punitive damages. In response, Liposcience answered denying liability and moved for summary judgment which Superior Court Judge Howard E. Manning granted on the wrongful discharge claim but denied on the breach of contract claim.

Following Franco, Jr.'s voluntary dismissal of his unfair and deceptive trade practices and punitive damages claims, a jury trial commenced on the breach of contract claim before Superior Court Judge Allen Baddour. However, at the close of all the evidence during the trial, Judge Baddour directed a verdict for Liposcience concluding that "[p]laintiff did not present any evidence at trial of consideration supplied by him to support the alleged contract at issue." Thereafter, Franco, Jr. learned that Judge Baddour's father and Dr. Sanders were once commonly affiliated with the University of North Carolina, and therefore filed motions for new trial and recusal. Judge Baddour denied those motions.

FRANCO v. LIPOSCIENCE, INC.

[197 N.C. App. 59 (2009)]

On appeal, Franco, Jr. argues the trial court erred by (I) granting a directed verdict for Liposcience on his breach of contract claim; and (II) denying his motion to recuse Judge Baddour.

I.

[1] Franco, Jr. acknowledges that Liposcience originally hired him as an at-will employee. In this appeal, however, he contends that the promises in the Retaliation Letter formed a contract precluding Liposcience's right to terminate his employment in retaliation for Franco, Sr.'s actions. Because there was no consideration to form a contract, we disagree.

North Carolina embraces a strong presumption of at-will employment unless the employment relationship fits within an exception, one being a contract specifying a definite period of employment. *See Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331-32, 493 S.E.2d 420, 422 (1997). Moreover, we have held that an "employment-at-will contract may be supplemented by additional agreements which are enforceable." *Martin v. Vance*, 133 N.C. App. 116, 121, 514 S.E.2d 306, 309 (1999) (citing *Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 261, 335 S.E.2d 79, 84 (1985)). Like any other contract, however, such additional agreements must be supported by consideration. *See id.*; *Watson Electrical Constr. Co. v. Summit Cos., LLC*, 160 N.C. App. 647, 655, 587 S.E.2d 87, 94 (2003) ("Consideration is the glue that binds parties together, and a mere promise, without more, is unenforceable.") (citation and quotation marks omitted).

The Retaliation Letter's two distinct promises—that Liposcience would not retaliate against Franco, Jr. for Franco, Sr.'s actions and that the Chairman of the Board of Directors would provide express written approval of any material adverse employment action—constitute additional obligations on the part of Liposcience. Indeed, when Franco, Jr. received the Retaliation Letter, he was already employed. The Retaliation Letter did not increase or diminish his pay, duties, rights, or anything else that could be deemed consideration flowing from Franco, Jr. to Liposcience. As the trial court noted, mere continued employment by the employee is insufficient. *See Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 121-22, 516 S.E.2d 879, 882-83 ("the prospect of continued employment is insufficient to support a covenant not to compete where the employee receives no change in compensation, commission, duties, nature of employment or other consideration in exchange for signing the agreement"), *disc. review denied*, 350 N.C. 832, 539 S.E.2d 288 (1999).

Nonetheless, Franco, Jr. contends that consideration to support the Retaliation Letter was supplied by Franco, Sr. He argues that because Franco, Sr. negotiated for the Retaliation Letter in connection with the Severance Agreement, Franco, Jr. is entitled to enforce the Retaliation Letter as a third-party beneficiary.

Neither party disputes the validity of the Severance Agreement, and there is evidence showing that Franco, Sr. negotiated for the Retaliation Letter for Franco, Jr.'s benefit. However, the Retaliation Letter is not referenced in the Severance Agreement, which contains a merger clause. Therefore, the promises in the Retaliation Letter were not incorporated and made binding in the Severance Agreement. Accordingly, Franco, Jr. cannot enforce the promises in the Retaliation Letter as a third-party beneficiary and we reject this assignment of error.

We note that our dissenting colleague implores us to hold that forbearance by Franco, Sr. created sufficient consideration to transform the letter sent by Liposcience to Franco, Jr. into an employment contract. First, our research reveals no case in North Carolina has ever held such regarding employment contracts. Second, all of the cases relied upon by the dissent to support holding that the forbearance of a third party may be sufficient to create consideration for another party, are debtor-type cases. *Inv. Props. of Asheville, Inc. v. Norburn*, 281 N.C. 191, 188 S.E.2d 342 (1972) ("In a guaranty contract, a consideration moving directly to the guarantor is not essential. The promise is enforceable if a benefit to the principal debtor is shown or if detriment or inconvenience to the promisee is disclosed."); *Myers v. Allsbrook*, 229 N.C. 786, 51 S.E.2d 629 (1949) (defendant's oral promise to pay his brother's debt to plaintiff not enforceable under Statute of Frauds); *Branch Banking & Trust Co. v. Kenyon Inv. Corp.*, 76 N.C. App. 1, 332 S.E.2d 186, *appeal withdrawn*, 316 N.C. 192, 341 S.E.2d 587 (1986) (the defendant, holder of a second deed of trust on a parcel of land, assumed principal debtor's obligation relating to first deed of trust). Though in general, employment contracts are guided by the general principles of contract, we decline to extend the principles from the debtor cases cited by the dissent to defeat the application of the at-will employment doctrine here.

The dissent further notes that "a failure to allow Plaintiff to enforce the Retaliation Letter would have the effect of substantially undermining a significant component of the bargain that Franco Sr. made with Defendant in the Severance Agreement." *Post* at 18. Our

holding does not affect the rights of Franco Sr. as he is not a party to this action nor does it appear he has sought to enforce his rights in another action.

## II.

**[2]** Franco, Jr. next argues that the trial court erred by denying his combined motions for a new trial and to recuse Judge Baddour. We disagree.

First, we address the denial of Franco, Jr.'s motion for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59(a)(8) (2007), on the ground that the court committed various errors of law. We review denial of a Rule 59(a)(8) motion *de novo. Kinsey v. Spann,* 139 N.C. App. 370, 373, 533 S.E.2d 487, 490 (2000). However, the argument in Franco, Jr.'s brief before this Court consists of the following: "[T]he trial court reversibly erred in directing a verdict for Defendant. The trial court therefore also erred in denying Franco, Jr.'s motion for a new trial . . . ." Because we have already concluded that the trial court did not err by granting the directed verdict, and Franco, Jr. advances no further argument, we summarily reject this assignment of error.

Second, we consider Franco, Jr.'s argument that his motion for new trial should have been granted because he objectively demonstrated grounds for Judge Baddour's disqualification. A party requesting a judge's recusal "must 'demonstrate objectively that grounds for disqualification actually exist.' " *In re LaRue,* 113 N.C. App. 807, 809, 440 S.E.2d 301, 303 (1994) (quoting *State v. Kennedy,* 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993)). "The requesting party has the burden of showing through substantial evidence that the judge has such a personal bias, prejudice or interest that he would be unable to rule impartially." *See State v. Fie,* 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987) (citations omitted).

Franco, Jr. argues that Judge Baddour's father's affiliation with Liposcience CEO Dr. Sanders created grounds for Judge Baddour's disqualification. Specifically, Franco, Jr. produced evidence that Dr. Sanders served on the University of North Carolina's Board of Trustees when the Board approved the hiring of Judge Baddour's father as the University's Athletic Director. Dr. Sanders' tenure on the Board of Trustees ended in 2001. At the time of trial, Dr. Sanders was a member of UNC's School of Public Health Advisory Council, which allegedly worked closely with the Athletic Department to promote health and nutrition in local schools.

However, Dr. Sanders offered an affidavit which established that he had very little personal communication with Judge Baddour's father, and that even his professional connection to the judge's father was limited to Board of Trustees' meetings and related functions. Accordingly, given the remote and arm's length affiliation Dr. Sanders had with Judge Baddour's father, Franco, Jr. did not carry his burden to demonstrate objectively that grounds for Judge Baddour's recusal existed.

Affirmed.

Judge Robert C. HUNTER concurs.

Judge ERVIN dissents by separate opinion.

ERVIN, Judge dissenting.

Although I fully concur in the Court's conclusion that the trial court properly denied Plaintiff's recusal motion, I respectfully dissent from my colleagues' determination that the trial court correctly granted a directed verdict in favor of Defendant at the close of all of the evidence. As a result, I believe that the trial court's judgment should be reversed and that this matter should be remanded for a new trial.

A trial court evaluating a dismissal motion under N.C. Gen. Stat. § 1A-1, Rule 50(a), must view the evidence in the light most favorable to the non-moving party and give that party the benefit of every reasonable inference arising from the evidence. *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580 (1983). During this process, all conflicts and inconsistencies in the evidence must be resolved in favor of the non-moving party. *Davis & Davis Realty Co., Inc. v. Rodgers*, 96 N.C. App. 306, 308-09, 385 S.E.2d 539, 541 (1989), *dis. rev. den.*, 326 N.C. 263, 389 S.E.2d 112 (1990). After a careful review of the briefs and the record, I am convinced that there is evidence in the record tending to show that Plaintiff had an enforceable employment agreement providing him with protection from retaliatory treatment, which Defendant breached, and that this evidence is sufficient to withstand Defendant's directed verdict motion.

When viewed in the light most favorable to the Plaintiff, the evidence tends to show that, at the time that Plaintiff's father, Richard Franco, Sr., was removed from his position as the Executive Chairman of Defendant's Board of Directors, he negotiated a Sev-

erance Agreement with Charles Sanders, the new Board Chairman, under which Franco Sr. resigned as Executive Chairman while remaining a voting member of the Board until at least May 2004.[2] The Severance Agreement included a mutual release of claims between the parties to that agreement and contained language providing that "[t]his Agreement, together with the Non-Competition Agreement[3], sets forth the entire and fully integrated understanding between the parties, and there are no representations, warranties, covenants or understandings, oral or otherwise, that are not expressly set out herein [(merger clause)]."

During the negotiations leading up to the execution of the Severance Agreement, Franco Sr. insisted that Plaintiff be provided with protection from retaliatory conduct stemming from his relationship with Franco Sr. As a result, Defendant provided Plaintiff with the Retaliation Letter, which is the document upon which he bases his claims in this proceeding. Plaintiff had no involvement in the negotiation of the Retaliation Letter. The Retaliation Letter provided that (1) Plaintiff would not be subject to adverse employment action "based on [his] relationship with [Franco Sr.] and not for any legitimate business purpose" and that (2), "from and after the date of this letter and for a period of two years thereafter, no employment action will be taken by [Defendant] that will have any material adverse effect on the terms and conditions of your employment without my prior express approval, of which you will receive a copy."[4] Franco Sr. testified that he would not have executed the Severance Agreement unless the Retaliation Letter had been agreed to by Defendant and provided to Plaintiff.[5]

---

2. Franco Sr. also continued to hold a substantial number of Defendant's shares.

3. The Non-Competition Agreement was a separate document executed by both Franco Sr. and Defendant prohibiting Franco Sr. from competing with Defendant for a period of 1 year. None of the provisions of the Non-Competition Agreement are relevant to the matters in dispute between the parties to this proceeding.

4. The record reflects that Sanders personally approved essentially all of the actions taken against Plaintiff from the time that he was provided with the Retaliation Letter until his dismissal, so that Plaintiff has not advanced any contention to the effect that Defendant violated this second aspect of the Retaliation Letter. Thus, the only issue that arises in connection with the consideration of Plaintiff's complaint against Defendant relates to the first of the two provisions discussed in the text.

5. In addition to the Retaliation Letter, Defendant also provided Plaintiff with another document in which two of its corporate officials stated that, in the event that Sanders left Defendant, they would attempt to obligate any successor Chairman to comply with the same terms and conditions as those that applied to Sanders under the Retaliation Letter.

Throughout the period from the delivery of the Retaliation Letter to Plaintiff on 13 December 2002 until Plaintiff's termination from Defendant's employment on 24 February 2004, Franco Sr. engaged in a number of actions intended to persuade Defendant to make certain business decisions and to honor certain commitments that he believed had been made to shareholders. Franco Sr. continued to take such actions even after resigning from Defendant's Board on 29 October 2002. Plaintiff contends that, within a relatively short time following a number of Franco Sr.'s actions or perceived actions, Defendant took retaliatory actions against him, culminating in his termination, and that he suffered monetary loss as a result of Defendant's conduct.

At trial, the principal issue was the extent, if any, to which the Retaliation Letter constituted an enforceable agreement that sufficed to take the employment relationship between Plaintiff and Defendant outside the "employment at will" doctrine and, if so, whether Defendant violated the Retaliation Letter by terminating Plaintiff from its employment in retaliation for various actions taken by Franco Sr. in his role as dissident director and shareholder. The Court concludes on appeal that the trial court properly directed a verdict in favor of Defendant because "there was no consideration to form a contract" since (1) Defendant did not receive additional consideration from Plaintiff over and above his continued willingness to remain in Defendant's employ and since (2) the fact that "the Retaliation letter is not mentioned in the Severance Agreement, which contains a complete merger clause," compels the conclusion that "the promises made in the Retaliation Agreement were not incorporated and made binding in the Severance Agreement." Although I agree that Plaintiff's decision to remain in Defendant's employment following receipt of the Retaliation Letter does not result in the creation of a binding contract between Plaintiff and Defendant, *Guarascio v. New Hanover Health Network*, 163 N.C. App. 160, 592 S.E.2d 612 (2004), *disc. rev. den.*, 163 N.C. App. 160, 592 S.E.2d (2004), I do believe that, when the evidence is taken in the light most favorable to Plaintiff, the record allows the trier of fact to find that the Retaliation Letter constitutes an enforceable agreement between the parties.

According to well-established North Carolina law, "a binding contract is created by an agreement involving mutual assent of two parties who are in possession of legal capacity, where the agreement consists of an exchange of legal consideration." *Creech v. Melnik*, 147 N.C. App. 471, 477, 556 S.E.2d 587, 591 (2001). " '[A] mere promise,

without more, [however], is unenforceable.' " *Inland Constr. Co. v. Cameron Park II, Ltd., LLC*, 181 N.C. App. 573, 576, 640 S.E.2d 415, 418 (2007) (quoting *Lee v. Paragon Group Contractors*, 78 N.C. App. 334, 338, 337 S.E.2d 132, 134 (1985)). Instead, " '[a]n enforceable contract is one supported by consideration.' " *Id.* (quoting *Lee*, 78 N.C. App. at 337, 337 S.E.2d at 134). "Consideration consists of 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.' " *Inland Constr.*, 181 N.C. App. at 577, 640 S.E.2d at 418 (citing *Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981)). "What constitutes valuable consideration depends upon the context of a particular case." *Estate of Graham v. Morrison*, 168 N.C. App. 63, 68, 607 S.E.2d 295, 299 (2005).

The record clearly establishes that Plaintiff did not request Defendant to enter into the Retaliation Letter and that the Retaliation Letter resulted from negotiations between Franco Sr. and Sanders relating to a range of different issues. However, the Supreme Court has clearly stated that "[f]orbearance to exercise legal rights is sufficient consideration for a promise given to secure such forbearance even though the forbearance is for a third person rather than that of the promisor." *Investment Properties of Asheville, Inc. v. Norburn* 281 N.C. 191, 196, 188 S.E.2d 342, 345 (1972); *see also Myers v. Allsbrook*, 229 N.C. 786, 791, 51 S.E.2d 629, 631-32 (1949) ("forbearance to exercise legal rights is a sufficient consideration for a promise made on account of it," "even when the forbearance is in respect to the liability of a third person rather than that of the promisor"); *Branch Banking & Trust Co. v. Kenyon Investment Corp.*, 76 N.C. App. 1, 13, 332 S.E.2d 186, 194 (1986), *app. withdrawn*, 316 N.C. 192, 341 S.E.2d 587 (1986).[6] As a result, the mere fact that the Retaliation Agreement was negotiated by Franco Sr. rather than

---

6. In reliance on language found in decisions such as *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987), *overruled in part by Kurtzman v. Applied Analytical Indus.*, 347 N.C. 329, 493 S.E.2d 420 (1997) ("if an employee furnishes 'additional consideration' . . . , such consideration may take the case out of the usual employment-at-will rule") (citing *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 139 S.E.2d 249 (1964), and *Walker v. Westinghouse Electric Co.*, 77 N.C. App. 253, 260, 335 S.E.2d 79, 84 (1985), *disc. rev. den.* 315 N.C. 597, 341 S.E.2d 39 (1986), ("If an employee gives some additional consideration in addition to the usual obligation of service, a contract for an indefinite term" might become enforceable) (citation omitted), Defendant argues that the affected employee, and only the affected employee, can provide the consideration needed to create an enforceable agreement. However, the holdings in the decisions cited by Defendant do not directly address the issue for which Defendant has cited them, and I can think of no reason why the usual rules governing the validity of contracts should not apply to employment-related agreements.

Plaintiff does not mean that it is not a binding agreement given that Plaintiff clearly accepted its terms and given that Franco Sr. surrendered his right to take legal action against Defendant in return for the promises made to him in connection with his resignation as Defendant's Executive Chairman. Thus, there is ample consideration for the Retaliation Letter based upon Franco Sr.'s decision to enter into the Severance Agreement rather than pursue whatever legal rights he might have had against Defendant following his removal as Defendant's Executive Chairman.[7]

As noted above, however, the Court has concluded that the Retaliation Letter is not enforceable against Defendant because the Severance Agreement contains a merger clause and because there is no reference to the Retaliation Agreement in the Severance Agreement. To be sure, "where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed that the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing." *Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953). "The parol evidence rule is a rule of substantive law, though it is often expressed as if it were a rule of evidence." *Phelps v. Spivey*, 126 N.C. App. 693, 697, 486 S.E.2d 226, 229 (1997); *see also Hinshaw v. Wright*, 105 N.C. App. 158, 164, 412 S.E.2d 138, 142 (1992); *Weiss v. Woody*, 80 N.C. App. 86, 91, 341 S.E.2d 103, 106 (1986), *cert. den.*, 316 N.C. 738, 345 S.E.2d 399 (1986). As a result, "all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement" and "parol testimony [concerning] prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced in the writing, is incompetent." *Neal*, 239 N.C. at 77, 79 S.E.2d at 242. "Merger clauses" "were designed to effectuate the policies of the Parol Evidence Rule; i.e.,

---

7. The Court notes that "no case in North Carolina has ever held that [third party consideration suffices to support an] employment contract [] and we decline to extend the principles from the debtor cases cited by the dissent to defeat the application of the at-will employment doctrine here." I am not persuaded by this argument. First, I have never understood that the consideration rules applicable to employment contracts substantially differ from those applicable to any other type of contract. At a minimum, the Court has not cited any authority in support of that proposition, and the correctness of this proposition is not intuitively obvious to me. Secondly, recognition of third party consideration as sufficient to render an employment contract enforceable does not "defeat" the at-will employment doctrine. Instead, it enforces that doctrine, which has always allowed an exception for situations in which an employer and an employee enter into a binding contract, at which point the relations between the parties are governed by the contract rather than by the at-will employment doctrine.

barring the admission of prior and contemporaneous negotiations on terms inconsistent with the terms of the writing" and "create a rebuttable presumption that the writing represents the final agreement between the parties." *Zinn v. Walker*, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987). Generally speaking, North Carolina recognizes and gives effect to merger clauses of the type present in the Severance Agreement. *Tar River Cable TV, Inc. v. Standard Theatre Supply Co.*, 62 N.C. App. 61, 302 S.E.2d 458 (1983).

There are, however, exceptions to the general prohibition against allowing the use of parol testimony to vary or expand the contents of written agreements. First, allegations of fraud or mistake, *Neal*, 239 N.C. at 77, 79 S.E.2d at 242, may render the parol evidence rule inoperative. Secondly, "where giving effect to the merger clause would frustrate and distort the parties' true intentions and understanding regarding the contract, the clause will not be enforced . . . ." *Zinn*, 87 N.C. App. at 333, 361 S.E.2d at 319; *see also Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 654, 670 S.E.2d 321, 326 (2009) ("The one exception to this general rule applies when giving effect to the merger clause would frustrate the parties' true intentions."); *Hinshaw v. Wright*, 105 N.C. App. 158, 162, 412 S.E.2d 138, 141 (1992) ("The one exception to this general rule applies when giving effect to the merger clause would frustrate the parties' true intentions").

"The distinction between the application of the two rules lies in the parties' overall intended purposes for the transaction in each case and whether admission of parol evidence will contradict or support those intentions as expressed in the writings." *Zinn*, 87 N.C. App. at 333, 361 S.E.2d 319. The first exception may be applicable when a party seeks to "introduce parol agreements which evidence an *entirely different contract* from that written," *Zinn*, 87 N.C. App. at 333, 361 S.E.2d 319 (citations omitted), "for the allegations of fraud challenge the validity of the contract itself, not the accuracy of its terms—the instrument itself, on the issue of fraud, is the subject of dispute." *Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 270, 141 S.E.2d 522, 525 (1965). On the other hand, "[w]hen . . . the parties' conduct indicates their intention to include collateral agreements or writings despite the existence of the merger clause and the parol evidence is not markedly different, if at all, from the written contract, the parties' intentions should prevail." *Zinn*, 87 N.C. App. at 334, 361 S.E.2d at 319. Given that there is no allegation that Defendant procured the Severance Agreement by fraud or that the parties to the

agreement operated subject to a mistake at the time that it was entered into, attention should be focused on the second of these two exceptions to the general rule prohibiting consideration of extrinsic evidence concerning the contents of a written contract that contains a merger clause.

A careful examination of the Severance Agreement and the Retaliation Letter reveals that there are no outright inconsistencies between the two documents. Furthermore, the undisputed evidence in the record reveals that all parties to the negotiations leading to the agreement recognized that the Retaliation Letter was an integral part of the process that produced the Severance Agreement and that Franco Sr. insisted on providing Plaintiff with protection against retaliatory conduct by Defendant as a precondition for entering into the Severance Agreement. In fact, in an email dated 10 December 2002, which was admitted into evidence at trial as Plaintiff's Exhibit 104, Sanders set forth the "terms of the deal" to various officials of Defendant as follows:

[For] your approval as soon as is convenient[:]

1. Franco will resign as Chairman of the Board and as a member of all committees. He will remain a board member, serving until the annual meeting of 2004 (presumably May).

2. He will receive 2 years of salary and benefits beginning 11/1/02 with a total value of $854,179.

3. He will receive his 2002 prorated bonus.

4. He will receive the final 30,000 options granted to him under the August 2001 grant of NQ options given, to make him whole for options he had given back in order to increase the option pool in one of the earlier financings. This represents an acceleration of three months.

5. He will receive an office allowance of $1,000 per month for 18 months.

6. He will release Liposcience from all claims and we will do the same for him.

7. *For a period of 2 years no employment action may be taken against Rich Franco Jr. that have a material adverse effect on the terms and conditions of RF Jr.'s employment without the express written consent of Charles A. Sanders (in-*

*cluding furnishing a copy of the consent to RF Jr.). The protected employment actions include a reduction in RF Jr's comp and benefits, material diminution in title, role and responsibilities, and material disciplinary action including termination.*

8. Lucy and Tim undertake to obligate any successor chairman to adhere to same terms that apply to CAS.

9. Rich Franco will not compete with Lioscience for 1 year following termination of his employment with Lioscience but shall be free to serve on boards of other companies so long as they are not direct competitors (specific companies named).

(emphasis added). The email continues:

This is the basic agreement. Hutchinson and Mason have blessed it. While none of us are happy we had to take this route, I believe it is the best course for the company. Going to court will use resources and very importantly divert the management from getting the business back on track.

With regard to Item No. number 7, Sanders says:

The language relating to RF Jr. is apparently necessary in RF Sr.'s view. It does not protect him from nonperformance. . . . I will provide you the full agreement if you wish but the highlighted points summarize the important parts of the agreement and avoid the 'legalese[.]' "

Sanders concludes by saying, "[t]here are several ways we could proceed including giving me your approval by phone, email, or through convening a short meeting of the Board by conference call sometime before Friday if possible. . . . Harold Lichtin has already reviewed and approved it." At an absolute minimum, there is evidence in the record tending to show that both parties to the agreement between Franco Sr. and Defendant viewed the Retaliation Letter as an integral part of the overall agreement; that the Retaliation Letter was intended to directly benefit Plaintiff; *Michael v. Huffman Oil Co.*, 190 N.C. App. 256, ——, 661 S.E.2d 1, 10 (2008), *dis. rev. den.*, 363 N.C. 129, 673 S.E.2d 360 (2009); and that a failure to treat the Retaliation Letter as part of the Severance Agreement despite the existence of the merger clause would have the effect of "frustrat[ing] and distort[ing] the parties' true intentions and understanding regarding the contract" and " 'nullify[ing] the clearly understood and expressed intent of the contracting parties,' " " 'lead[ing] to a patently unjust and absurd re-

sult . . . ." *Zinn*, 87 N.C. App. at 333, 361 S.E.2d at 318 (citing *T.A. Loving Co. v. Latham*, 20 N.C. App. 318, 329-30, 201 S.E.2d 516, 523-24 (1974); *see, eg., Chapel Hill Spa Health Club, Inc. v. Goodman*, 90 N.C. App. 198, 202, 368 S.E.2d 60, 63 (1988) (appropriate to treat a written membership agreement and an oral referral arrangement as part of a single contract despite the presence of language in the membership contract "stating that no oral promises, warranties, or representations were made other than those in the contract"); *T.A. Loving Co.*, 20 N.C. App. at 328-30, 201 S.E.2d 523-24 (appropriate to treat a side letter reflecting oral discussions that a contractor would be held harmless from a provision in a written contract stating a maximum cost of construction as part of the parties' overall agreement despite the presence of a merger clause in the written contract). Thus, there is evidence in the record that tends to show that consideration provided by Franco Sr. adequately supports the Retaliation Letter despite the presence of a merger clause in the Severance Agreement.

The next issue that needs to be addressed in resolving Plaintiff's appeal from the trial court's judgment is the extent, if any, to which the Retaliation Letter is effective to take the employment arrangement between Plaintiff and Defendant outside the "employment at will" doctrine which prevails in North Carolina. *Kurtzman*, 347 N.C. at 331, 493 S.E.2d at 422. Under the "employment at will" doctrine, "in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of the performance of either party." *Id.* Neither the Supreme Court nor this Court have ever held that the only contractual relationship sufficient to take a particular employment relationship out of the "employment at will" category is a contract for a definite term of employment. On the contrary, the Supreme Court specifically denied having held in *Kurtzman* that "the establishment of 'a definite term of service' is the sole means of contractually removing the at-will principle." *Id.*, 347 N.C. at 334, 493 S.E.2d at 424. A number of prior decisions of the Supreme Court and this Court have suggested that a variety of different contractual provisions would suffice to overcome the presumption that a particular employment relationship is terminable at will. *See Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971) (since the employment contract "contains no provision concerning the duration of the employment or the means by which it may be terminated," it "is terminable at the will of either party irrespective of the quality of the performance by the

other"); *Doyle v. Asheville Orthopaedic Associates, P.A.*, 148 N.C. App. 173, 174, 557 S.E.2d 577, 577 (2001), *disc. Rev. Den.*, 355 N.C. 348, 567 S.E.2d 278 (2002) ("Breach of contract is the proper claim for a wrongful[ly] discharged employee who is employed for a definite term or an employee subject to discharge only for 'just cause.' "); *Wuchte v. McNeil*, 130 N.C. App. 738, 740, 505 S.E.2d 142, 144 (1998) (describing *Still* as having concluded that "[a]n employee is presumed to be an employee-at-will absent a definite term of employment or a condition that the employee can be fired only 'for cause' "); *Mortenson v. Magneti Marelli U.S.A., Inc.*, 122 N.C. App. 486, 489, 470 S.E.2d 354, 356 (1996), *disc. rev. den.*, 344 N.C. 438, 476 S.E.2d 120 (1996) (employee's employment terminable at will because the employee's employment agreement did not "expressly state or imply, that the employment was to be permanent or that the plaintiff could be discharged only for cause").[8] Thus, there is considerable support in general statements found in various North Carolina decisions for a conclusion that a contract that provides an employee from protection against a limited range of adverse employment actions is just as efficacious as a contract establishing a definite term of employment for the purpose of taking a particular employer-employee relationship outside the ambit of the "employment at will" doctrine.[9] Further-

---

8. Defendant argues vigorously that none of the cases cited in the text actually hold that a contractual provision other than one establishing a definite term of employment suffices to render a particular employment relationship something other than an "at will" arrangement. This fact should not, however, result in a decision to disregard the language in the text given that each of these decisions states a general principle to be used in evaluating the extent to which particular contractual provisions do and do not rebut the presumption that a particular employee holds employment "at will." On the other hand, it would be equally inappropriate to treat these cases as having definitively resolved the issue that the Supreme Court reserved in *Kurtzman*.

9. Admittedly, there are cases that describe the "contract" exception to the "employment at will" doctrine in terms that omit any reference to any sort of contractual provision other than one establishing a definite term of employment. *See Kurtzman*, 347 N.C. at 331, 493 S.E.2d at 422; *Harris*, 319 N.C. at 629, 356 S.E.2d at 359 ("North Carolina courts have repeatedly held that absent some form of contractual agreement between an employer and employee establishing a *definite* period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of the performance by the other party' ") (emphasis in the original); *Malever v. Kay Jewelry Co.*, 223 N.C. 148, 149, 25 S.E.2d 436, 436 (1943) (no employment contract exists where the agreement itself is for no definite time, and there is no business usage or other circumstance which would tend to give it any fixed duration). The existence of these cases does not, however, definitely indicate that the absence of a fixed term of employment precludes the formation of an employment contract sufficient to rebut the presumption that a particular employment arrangement is "at will." In fact, none of them contain such a holding. As a result, these cases should simply be read as a quick statement of the general rule that

**FRANCO v. LIPOSCIENCE, INC.**

[197 N.C. App. 59 (2009)]

more, given that "just cause" and "non-retaliation" provisions would be deemed enforceable under general principles of contract law, I can see no reason for holding such provisions insufficient to prevent a particular employment relationship from being terminable at will. As a result, I believe that otherwise enforceable language prohibiting actions such as those specified in the Retaliation Letter should suffice to take a particular employment relationship outside the scope of the "employment at will" doctrine.[10]

Although the Supreme Court has placed considerable emphasis on the economic benefits that have accrued, *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 174, 381 S.E.2d 445, 446 (1989), *disc. rev. den.*, 331 N.C. 284, 417 S.E.2d 249 (1992) ("adoption of the [at-will] rule by the courts greatly facilitated the development of the American economy at the end of the nineteenth century"), and continue to accrue, *Kurtzman*, 347 N.C. at 334, 493 S.E.2d 423 ("the rule remains an incentive to economic development, and any significant erosion of it could serve as a disincentive"), from the "employment at will" doctrine, I do not believe that recognition of agreements other than provisions guaranteeing a definite term of employment would amount to the creation of an additional exception to the "employment at will" doctrine of the sort decried by Defendant. Instead, recognition of the enforceability of contractual provisions such as those contained in the Retaliation Letter is fully consistent with North Carolina's long-standing emphasis on the importance of freedom of contract, *see Tillman v. Commer. Credit Loans, Inc.*, 362 N.C. 93, 115, 655 S.E.2d 362, 377 (2008) (stating that "the right to make contracts is embraced

---

a contract for a definite term of employment suffices to rebut the presumption that a particular employment relationship is at will without deeming them to have resolved the issue reserved in *Kurtzman*.

10. Defendant points to the indefinite term of certain of the protections provided to Plaintiff in the Retaliation Letter and urges this Court not to recognize such provisions as enforceable because of their unlimited duration. Defendant's argument overlooks the fact that the duration of the Retaliation Letter was, presumably, negotiated by the parties. Furthermore, Defendant's argument overlooks the practical reality that, over time, the likelihood that Plaintiff would be subject to retaliation based on the activities of Franco Sr. would probably tend to diminish as Franco Sr.'s level of involvement in Defendant's activities inevitably declined following his departure from Defendant's Board. Finally, Defendant's argument overlooks the general legal principle that, where no temporal limitation is specified in a contract, the rule of reasonableness takes over. *See East Coast Development Corp. v. Alderman-250 Corp.*, 30 N.C. App. 598, 604, 228 S.E.2d 72, 77 (1976) (stating that, "[a]s a general rule, where no time is fixed for the termination of a contract it will continue for a reasonable time, taking into account the purposes that the parties intended to accomplish"). As a result, the fact that the Retaliation Letter lacks a defined term does not support a decision declining to enforce it.

FRANCO v. LIPOSCIENCE, INC.

[197 N.C. App. 59 (2009)]

in the conception of liberty as guaranteed by the Constitution. . . . It is the simple law of contracts that as a man consents to bind himself, so shall he be bound"); *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 243, 539 S.E.2d 274, 276 (2000) (stating that "our state's legal landscape recognizes that . . . freedom of contract is a fundamental constitutional right"), and that giving effect to a variety of freely negotiated contractual arrangements would have the effect of strengthening the "employment at will" doctrine by giving employers and employees greater flexibility in negotiating employment agreements. Furthermore, assuming that it is otherwise valid under general principles of contract law, a failure to allow Plaintiff to enforce the Retaliation Letter would have the effect of substantially undermining a significant component of the bargain that Franco Sr. made with Defendant in the Severance Agreement. Thus, I do not believe that the basic policies effectuated by the "employment at will" doctrine would be thwarted by allowing Plaintiff to enforce the relatively unusual contractual provisions at issue here.

Finally, the record contains sufficient evidence to support a reasonable inference that Defendant violated the Retaliation Letter by taking a series of adverse employment actions, including terminating Plaintiff's employment, in retaliation for various actions taken by Franco Sr. Among other things, the record contains evidence tending to show (1) that, after Franco Sr. questioned a new reimbursement strategy and a proposed financing initiative and called for a meeting of disinterested directors to address "duty of care" issues, Defendant removed Plaintiff's managed care responsibilities and forced Plaintiff to cancel previously-approved vacation time; (2) that, after Franco Sr. criticized Defendant's new CEO and asked that he be given a "360 Degree" performance review, the new CEO gave Plaintiff a highly critical performance review; (3) that, after Franco Sr. reiterated his criticism of Defendant's CEO and his request for a "360 Degree" review, Defendant forced Plaintiff to cancel a previously-approved vacation; (4) that, after Franco Sr. asked for certain sales information, was allegedly responsible for an anonymous letter critical of shareholder communications, and resigned from the Board, Defendant removed sales training from Plaintiff's area of responsibility and again forced Plaintiff to cancel a previously-approved vacation; (5) that, after Franco Sr. demanded that Defendant provide certain financial information to shareholders, Plaintiff's reporting responsibilities were changed and he was forced to cancel previously-approved vacation time yet again; and (6) that, at various times after Franco Sr. and

other shareholders received certain financial disclosures from Defendant that Defendant initially resisted providing, Plaintiff was (a) forced to cancel previously-approved vacation once more, (b) informed that neither he nor other members of the "Leadership Team" would receive raises, (c) not afforded a scheduled performance review, (d) removed from the "Leadership Team," (e) given reduced spending authority, and (f) terminated from Defendant's employment. Although Defendant has offered a number of explanations that tend to suggest that the treatment that Plaintiff received had a legitimate business justification, was similar to treatment afforded to other employees, and had nothing to do with the actions taken by Franco Sr., those explanations create issues for resolution by the jury rather than by this Court. As a result, the record contains sufficient evidence tending to show, if believed, that Defendant terminated Plaintiff in retaliation for Franco Sr.'s conduct in violation of the Retaliation Letter.

Thus, for all of the reasons stated above, I am convinced that there is evidence in the record tending to show that Plaintiff had an enforceable employment agreement providing him with protection from retaliatory treatment, which Defendant breached, and that this evidence is sufficient to withstand Defendant's directed verdict motion, leaving the factual issues in dispute between the parties for resolution by the jury. As a result, I would remand this case to the trial court for the holding of a new trial and dissent from that portion of the Court's decision that declines to reach that result.