Argued and submitted May 3, reversed and remanded August 30, 2000

Cheryl SWENSON,
*Appellant,*

*v.*

LEGACY HEALTH SYSTEM,
an Oregon non-profit corporation,
and Legacy Visiting Nurse Association,
an Oregon non-profit corporation,
*Respondents.*

(9801-00584; CA A104559)

9 P3d 145

Jacqueline L. Koch argued the cause for appellant. With her on the briefs was Koch & Deering.

John V. Acosta argued the cause for respondents. With him on the brief was Stoel Rives, LLP.

Before Edmonds, Presiding Judge, and Linder and Kistler, Judges.

LINDER, J.

## LINDER, J.

Plaintiff appeals a summary judgment, arguing that the trial court erred in dismissing her claims for breach of contract and breach of the covenant of good faith and fair dealing based on defendants' refusal to pay her 24 weeks of severance pay. Because we agree that the record presents issues of fact for a jury's resolution, we reverse.

We review the trial court's entry of summary judgment to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 407, 939 P2d 608 (1997). We state the facts and all reasonable inferences to be derived from the facts in the light most favorable to plaintiff, the nonmoving party. *Id.*

Plaintiff was employed as director of human resources for defendant Legacy Visiting Nurse Association (LVNA), an operating unit of defendant Legacy Health System (Legacy). In 1996, Legacy began reorganizing its and LVNA's human resources departments, resulting in layoffs for a number of positions. On December 2, 1996, Legacy's senior vice president for human resources and quality management, Zappas, notified plaintiff by letter that her current position would be eliminated, effective March 31, 1997. Zappas encouraged plaintiff to apply for new positions that were being created and stated that, if plaintiff did not obtain a new position, Legacy "will provide you with information on your eligibility for severance pay * * *. Please call me if you have any questions."

On January 2, 1997, plaintiff sent a memorandum to LVNA's president and CEO, Johnson. In that memorandum, plaintiff noted her understanding that Legacy's "current" transition plan offered 11 weeks of severance pay, with a maximum of 20 weeks. She stated that she was "requesting a more generous severance plan based on the following considerations." Among other points, plaintiff indicated that she was willing to forego the $2,250 worth of outplacement services that LVNA was making available to laid-off employees and that she would sign an agreement not to disclose any additional severance pay.

On January 7, Johnson met with plaintiff. In that meeting, Johnson indicated that he wanted someone in plaintiff's position through the end of March to perform necessary human resources functions; that he wanted plaintiff to remain through that time to help train someone to take over her duties; and that he wanted plaintiff to be available to deal with the unions representing LVNA employees. Johnson indicated that LVNA would benefit from plaintiff's continued employment during the transition and asked plaintiff to prepare a memorandum setting forth her commitment to LVNA in exchange for enhanced severance pay.

Later that day, plaintiff sent Johnson a memorandum in which she set out her "understanding of what we have agreed to." As pertinent here, plaintiff stated that she "will remain in [her] current position * * * through March 31, 1997[,] in accordance with the December 2, 1996[,] communication from * * * Zappas"; that, upon plaintiff's exhaustion of her accrued leave, she would "begin severance pay of 24 weeks"; and that plaintiff "agreed to keep this severance arrangement confidential." That same day, Johnson dated and signed a notation on plaintiff's January 2, 1997, memorandum; the notation stated in part, "24 wks."

Approximately six weeks later, on February 19, 1997, Zappas sent plaintiff an e-mail in which she asked plaintiff why she had proposed a severance package that was "in excess of established policy" and why she had not discussed her severance benefits with Zappas. Zappas stated that she did not support plaintiff's "request" and that Zappas had advised Johnson not to "provide written confirmation" of the severance package. On February 21, plaintiff responded that Johnson had already agreed to the package, that he had authority to do so, that "we are in good faith complying with the terms of that contract," and that she had made several "major" decisions in reliance upon it. On February 27, Zappas wrote plaintiff a letter in which she asserted that plaintiff "knew" that Johnson lacked authority to negotiate a severance package, that the alleged agreement between plaintiff and Johnson was "not enforceable because it would have been without consideration," that plaintiff would receive seven weeks severance pay, and that Legacy "repudiate[d]

any agreement that you claim was made differing from" the latter severance pay amount.

Plaintiff continued working for LVNA through March 31, 1997. On April 7, 1997, after plaintiff had left LVNA's employ, Legacy's new vice president for human resources sent plaintiff a letter informing her that she would receive seven weeks severance pay.[1]

Plaintiff initiated this action. In her claim for breach of contract, plaintiff alleged that defendants failed to pay her the amount of benefits contemplated by her January 7, 1997, agreement with Johnson. In her claim for breach of the covenant of good faith and fair dealing, she alleged that there was a special relationship between the parties that defendants breached as a result of their actions in regard to her severance pay. Plaintiff sought economic damages for lost wages in the amount of $24,996.80, plus the value of related benefits, plus interest; and $200,000 in noneconomic damages.[2]

Defendants moved for summary judgment on the ground that plaintiff did not have an enforceable agreement for severance benefits "in excess of [Legacy's] stated policies." As pertinent here, defendants first argued that the alleged agreement was unenforceable because it lacked consideration. According to defendants, plaintiff was "already required" to remain in LVNA's employ until March 31, 1997, in order to receive any severance pay and was already obligated to perform human resource tasks assigned to her, such as training her replacement; they argued that, although plaintiff was an at-will employee for the purposes of wages, "[f]or purposes of severance, plaintiff had the functional equivalent of a fixed term [employment] contract." Defendants also maintained that the alleged agreement was unenforceable because plaintiff exercised "undue influence and

---

[1] The parties apparently do not dispute that Legacy's standard "transition plan" in effect at the time plaintiff left defendants' employ provided for seven weeks severance pay, not 11, as plaintiff previously had believed.

[2] Plaintiff also brought claims for fraud, intentional interference with economic relations, and negligent supervision. The trial court dismissed plaintiff's claims for fraud and intentional interference with economic relations and granted summary judgment on the negligent supervision claim. On appeal, plaintiff does not raise any issues relating to the trial court's disposition of those three claims.

unfair advantage" in negotiating it by representing to Johnson that he was authorized to agree to enhanced severance pay; for the same reason, defendants argued that the alleged agreement was "induced by fraud." Alternatively, defendants asserted that, even assuming the agreement between plaintiff and defendants was enforceable, Legacy was free to make unilateral changes in the agreement, that it did so, and that plaintiff "accepted" those changes by remaining in LVNA's employ after being informed by letter in February 1997 that Legacy did not intend to grant her enhanced severance pay. Finally, defendants argued that plaintiff's claim for breach of the implied covenant of good faith and fair dealing must fail for any of several reasons: first, as relevant to a tort remedy, there was no special relationship between plaintiff and defendants; second, as relevant to a contractual remedy, there was no agreement; and third, as relevant to either a tort or a contractual remedy, plaintiff acted in bad faith.

The trial court granted defendants' motion for summary judgment against plaintiff's breach of contract claim, reasoning that there was a lack of consideration for the alleged contract. The court also granted summary judgment against plaintiff's claim for breach of the covenant of good faith and fair dealing.[3]

■ We first consider whether the trial court erred in granting summary judgment on plaintiff's claim for breach of contract on the ground that the alleged agreement lacked consideration. On appeal, plaintiff asserts that her employment was not for a specified term, that she could have left any time after receiving notice of the elimination of her position, and that, although leaving defendant's employ before March 31, 1997, would have caused her not to receive *any* severance pay, nothing "compelled" her to remain in LVNA's

---

[3] Regarding plaintiff's claim for breach of the covenant of good faith and fair dealing, the trial court concluded that, to the extent plaintiff was pleading a claim for damages in tort, plaintiff and defendants lacked a "special relationship." The trial court also concluded that, insofar as the claim was based on the alleged agreement, the evidence did not support it. On appeal, plaintiff apparently has abandoned her argument relating to a special relationship between the parties. We, therefore, consider plaintiff's claim for breach of the covenant of good faith and fair dealing only in the context of the alleged contractual relationship between the parties.

employ until that date. Plaintiff argues that her promise to remain until March 31, 1997, therefore constituted consideration for Johnson's promise to grant her enhanced severance pay. In addition, plaintiff points to her promises to provide her "unique" expertise in training other employees, to give up other benefits, and to keep the agreement confidential.

Defendants respond that the trial court correctly concluded that the alleged agreement lacked consideration because, according to defendants, there is no evidence in the record that plaintiff "guarantee[d]" that she would remain until March 31, 1997, or that Johnson offered plaintiff enhanced severance pay specifically in order to obtain her promise to remain until March 31, 1997; because there is evidence in the record that plaintiff intended to remain in LVNA's employ until March 31, 1997, regardless of what amount of severance pay she would receive; and because plaintiff had, in effect, a preexisting duty to provide her services to defendants.

■      We agree with plaintiff that the trial court erred in granting defendants' motion for summary judgment on the ground that the agreement lacked consideration. As a matter of law, the promise of an at-will employee to continue in an employer's service for some specified future period of time constitutes consideration for an additional benefit promised by the employer. *See Stuart v. Tektronix, Inc.*, 83 Or App 139, 143-44, 730 P2d 619 (1986) (an at-will employee who continues employment in reliance on a promise of a future salary increase may hold the employer liable for a breach of promise). Viewing the record and all reasonable inferences in the light most favorable to plaintiff, the record in this case shows that plaintiff was an at-will employee; that, after being notified by Legacy that her position at LVNA would be eliminated as of March 31, 1997, plaintiff contacted LVNA's president and CEO, Johnson, and requested a "more generous" severance package than the one she understood she would receive under Legacy's standard transition plan; that plaintiff and Johnson met and discussed her severance package; and that plaintiff and Johnson "agreed" that, if plaintiff continued in LVNA's employ until March 31; 1997, she would receive 24 weeks of severance pay. That is, giving plaintiff the benefit of disputed facts and permissible inferences, a

factfinder could find that plaintiff gave something of value to defendants—her promise to continue in defendants' employ for some specified future period of time, a commitment that she, as an at-will employee, was not required to make—in return for defendants' promise of a more beneficial severance package. Even assuming that there also is contrary evidence, the described evidence raises questions of material fact regarding the existence of an enforceable agreement between plaintiff and defendants that preclude summary judgment.

■ We next consider whether we nevertheless should affirm the trial court's entry of summary judgment against plaintiff's breach of contract claim on the alternative ground urged by defendants—that, even assuming that there was an enforceable agreement, defendants were entitled to and did unilaterally and prospectively modify or repudiate the agreement and that plaintiff accepted or ratified that action. *See Shuler v. Distribution Trucking Co.*, 164 Or App 615, 621, 994 P2d 167 (1999) (affirming trial court's entry of summary judgment on alternative ground to that on which trial court relied). The trial court denied summary judgment on defendants' alternative ground, because it concluded that there was no evidence that plaintiff accepted defendants' purported modification of the agreement. On appeal, plaintiff responds to defendants' alternative argument by asserting that defendants could not unilaterally modify the agreement for enhanced severance pay because it was an express written agreement and because plaintiff had partially performed. Defendants maintain that, even assuming that there was an agreement between plaintiff and defendants, their modification of it was permissible because the modification was prospective; according to defendants, plaintiff did not "earn" or accrue any rights to severance pay until she completed the contemplated term of employment. Defendants also again argue that plaintiff's continued performance after she became aware of defendants' purported modification of the agreement constituted her implied acceptance of the modification.

■ Defendants' argument fails. To be sure, in the absence of an agreement to the contrary, an employer has the right to modify benefits unilaterally and prospectively; by continuing to work after learning of it, an employee impliedly

accepts that modification. *See Olson v. F & D Publishing Co., Inc.*, 160 Or App 582, 587-88, 982 P2d 556 (1999); *Brett v. City of Eugene*, 130 Or App 53, 57, 880 P2d 937 (1994).[4] However, as defendants themselves assume for purposes of this alternative argument in support of summary judgment, there is evidence in this record from which a factfinder could find that plaintiff and defendants entered into an express agreement relating to severance pay. Should the factfinder so find, the stated principles relating to unilateral prospective modification would not apply. At the least, there is a triable issue of fact in that regard. The trial court correctly denied summary judgment against plaintiff's breach of contract claim on defendants' alternative ground.

■   We turn to plaintiff's assignment of error relating to the trial court's entry of summary judgment on her claim for breach of the covenant of good faith and fair dealing. Plaintiff argues that there is evidence in the record from which a factfinder could find that defendants did not act in good faith or deal fairly with plaintiff, including defendants' actions of "allowing" Zappas to "interfere" with the alleged agreement and their action of attempting to repudiate it. Defendants respond that the record is devoid of evidence disputing defendants' "good faith belief that they were justified" in their actions in responding to plaintiff's "unacceptable and insubordinate" conduct.[5]

■   "[T]he law imposes a duty of good faith and fair dealing with respect to all contracts to facilitate performance and

---

[4] The stated principles are subject to some exceptions. For example, by continuing performance, an employee does not give up benefits that already have vested or been earned as of the time the employee learns of the employer's purported modification. "The question of when a benefit is earned or vested will vary in each case depending on the terms of the contract and the nature of the promised benefit." *Olson v. F & D Publishing Co., Inc.*, 160 Or App 582, 588-89 n 5, 982 P2d 556 (1999). Also, even in the absence of an express agreement, an employer's establishment of certain terms or conditions of employment may amount to an offer of a unilateral contract; in such instances, the employee's part performance precludes the employer from revoking what it offered in exchange for the employee's work. *Horton v. Prepared Media Laboratory*, 165 Or App 357, 361-62, 997 P2d 864 (2000).

[5] Defendants also argue that, as a legal matter, plaintiff cannot maintain a tort claim for breach of the duty of good faith and fair dealing, because there was no "special" or "fiduciary-type" relationship between plaintiff and defendants. As previously noted, however, plaintiff has abandoned any tort-based claim, and we therefore do not address that issue.

enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties." *Brown v. American Property Management Corp.*, 167 Or App 53, 63, 1 P3d 1051 (2000) (citing and quoting *Sheets v. Knight,* 308 Or 220, 233, 779 P2d 1000 (1989) (internal quotations omitted)). Viewing the record in the light most favorable to plaintiff, we already have concluded that the trial court erred in granting defendants' motion for summary judgment on plaintiff's breach of contract claim, because the record contains evidence from which a factfinder could find that plaintiff and defendants entered into an enforceable agreement for 24 weeks of severance pay. Maintaining that view of the record, we conclude that a factfinder also could find that defendants did not at all times act in good faith and deal fairly with plaintiff in regard to performance of the alleged agreement. For example, a jury *could* find—whether or not it *would* find—that defendants' unilateral actions in purporting to repudiate the agreement frustrated plaintiff's objectively reasonable expectation that defendants would pay her an enhanced severance amount. *See Hampton Tree Farms, Inc. v. Jewett,* 320 Or 599, 615-16, 892 P2d 683 (1995). On remand, plaintiff is entitled to present to the factfinder her claim that defendants breached the implied covenant of good faith and fair dealing. The trial court erred in granting summary judgment against that claim.

Reversed and remanded.