STEVEN EARL ELLIOTT, Plaintiff v. ENKA-CANDLER FIRE AND RESCUE
DEPARTMENT, INC., Defendant

No. COA10-1219

(Filed 5 July 2011)

**1. Employer and Employee— employment agreement and extension—consideration by employee—giving up at will status**

There was consideration in an employment agreement and its extension where a fire chief who was already in the job gave up his employment at will status and his right to leave at any time before the dates specified in the agreements.

**2. Public Officers and Employees— fire chief—employment agreements—public purpose—balanced budget**

A town's employment agreements with its fire chief served a public purpose in that the town was able to retain its fire chief for a significant period of time without fear that another municipality would lure him away. The contract did not call for payment regardless of whether the chief performed his public service duties, but for salary and benefits to continue only if defendant terminated plaintiff without cause. Furthermore, despite the statutory requirement that local budgets be balanced, there is no authority for the proposition that a municipality can evade payment of severance pay or breach of contract damages by simply not budgeting for them.

**3. Public Officers and Employees— employment contract— terminated fire chief—summary judgment**

Summary judgment was properly entered for plaintiff in an employment action against a town by a former fire chief where defendant did not show that the contract lacked consideration or violated public policy and defendant did not present any evidence that plaintiff was not performing his duties adequately under the agreements.

**4. Civil Procedure— motion for relief or new trial—notice of summary judgment**

The trial court did not abuse its discretion by denying defendant's motion for relief or for a new trial where plaintiff contended that it had not been provided with sufficient notice of defendant's motion for summary judgment.

ELLIOTT v. ENKA-CANDLER FIRE & RESCUE DEP'T, INC.

[213 N.C. App. 160 (2011)]

Appeal by defendant from judgment entered 13 May 2010 and order entered 26 May 2010 by Judge James L. Baker, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 23 February 2011.

*The Bidwell Law Firm, by Paul Louis Bidwell and Jessica A. Waters, for plaintiff-appellee.*

*The Sutton Firm, P.A., by April Burt Sutton, for defendant-appellant.*

GEER, Judge.

Defendant Enka-Candler Fire and Rescue Department, Inc. appeals from the trial court's grant of summary judgment to plaintiff Steven Earl Elliott, a former employee of defendant. Defendant had entered into a contract with plaintiff that provided for a specific term of employment and continued payment of salary and benefits if defendant terminated the contract prior to the end of the contract term. Defendant primarily argues on appeal that the contract between the parties is unenforceable as a matter of law because (1) there was no consideration flowing from plaintiff to defendant, and (2) the contract violated public policy. We disagree.

Plaintiff, who had been employed at will by defendant, relinquished his at-will status when he agreed to work for defendant for a definite term. In making this promise, plaintiff gave up the right to terminate his employment at any time. This detriment to plaintiff constituted consideration for defendant's promise.

Additionally, because this contract secured plaintiff's services as Fire Chief for a specified period at a specified rate, we conclude that the employment contract served a public purpose and did not otherwise violate public policy. Since the contract was enforceable and since defendant did not present any evidence that plaintiff breached the contract, the trial court properly granted summary judgment to plaintiff. We also find defendant's remaining arguments unpersuasive and, therefore, affirm.

Facts

Plaintiff began working as Fire Chief for defendant in 1996 as an at-will employee. On 20 July 2004, the parties entered into an Employment Agreement. The Employment Agreement stated that "the parties desire to provide for a contract that runs from June 1, 2004 through October 31, 2008, for the retention of [plaintiff] as the

Chief of [defendant] . . . ." Under the terms of the Employment Agreement, plaintiff would remain Fire Chief with his current salary and benefits. The Employment Agreement further provided that in the event defendant terminated plaintiff's employment, defendant would pay plaintiff the balance of his salary and provide all benefits through the end of the contract, as if plaintiff had remained a full-time employee.

Approximately two years later, on 17 April 2006, the parties executed an Extension Agreement. The Extension Agreement extended the termination date of the Employment Agreement from 31 October 2008 to 31 October 2013. All the other terms of the Employment Agreement were to remain in full force and effect under the Extension Agreement.

Defendant subsequently terminated plaintiff's employment as Fire Chief on 3 March 2008. On 15 April 2009, plaintiff filed suit against defendant alleging breach of contract based on defendant's failure to comply with the provisions of the Employment Agreement for payment of salary and benefits following termination. On 17 June 2009, defendant filed an answer and asserted several affirmative defenses, including unclean hands, accord and satisfaction, failure of consideration, and violation of public policy.

On 24 March 2010, defendant moved for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure. Plaintiff later filed his own motion for summary judgment on 6 April 2010. The trial court heard the motions on 10 May 2010. In an order entered 13 May 2010, the trial court determined that there were no genuine issues of material fact as to plaintiff's claims against defendant, defendant's affirmative defenses, or the amount of damages to which plaintiff was entitled. The court concluded that plaintiff was entitled to summary judgment as a matter of law and entered an order (1) denying defendant's motion for summary judgment, (2) granting plaintiff's motion for summary judgment, and (3) awarding plaintiff $310,885.76 plus prejudgment interest and costs.

On 14 May 2010, the day after summary judgment was entered, defendant filed, pursuant to Rules 59 and 60 of the Rules of Civil Procedure, a motion for relief from judgment or, in the alternative, to set aside the judgment and order a jury trial. The trial court entered an order denying defendant's motion on 26 May 2010. Defendant timely appealed to this Court from both the summary judgment order and the order denying defendant's motion for relief or a new trial.

I

**[1]** Defendant first contends that the trial court erred in denying its motion and granting plaintiff's motion for summary judgment because the Employment and Extension Agreements are unenforceable for lack of consideration. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). When appropriate, summary judgment may be rendered against the moving party. *Id.*

"It is well established that in an action for breach of contract, [a party's] promise must be supported by consideration for it to be enforceable." *Labarre v. Duke Univ.*, 99 N.C. App. 563, 565, 393 S.E.2d 321, 323, *disc. review denied*, 327 N.C. 635, 399 S.E.2d 122 (1990). Consideration sufficient to support a contract consists of " 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee.' " *Lee v. Paragon Group Contractors, Inc.*, 78 N.C. App. 334, 337-38, 337 S.E.2d 132, 134 (1985) (quoting *Brenner v. School House, Ltd.*, 302 N.C. 207, 215, 274 S.E.2d 206, 212 (1981)), *disc. review denied*, 316 N.C. 195, 345 S.E.2d 383 (1986). "Consideration is the 'glue' that binds parties together, and a mere promise, without more, is unenforceable." *Id.* at 338, 337 S.E.2d at 134 (quoting *In re Foreclosure of Owen*, 62 N.C. App. 506, 509, 303 S.E.2d 351, 353 (1983)).

In this case, defendant first argues that there was no consideration flowing from plaintiff to defendant. Defendant points to the fact that plaintiff was working for defendant when the Employment and Extension Agreements were executed and that the Agreements provided for no change in plaintiff's duties, pay, or benefits.

Defendant, however, overlooks the critical fact that by entering into the Employment Agreement, plaintiff relinquished his status as an at-will employee. In North Carolina, "in the absence of an employment contract for a definite period, both employer *and employee* are generally free to terminate their association *at any time and without any reason." Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 655, 412 S.E.2d 97, 99 (1991) (emphasis added), *cert. denied*, 331 N.C. 119, 415 S.E.2d 200 (1992). *See also Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971) (holding that where employee's contract contained no provision concerning duration of employment or means by which it may be terminated, such contract was terminable at will of

*either party* irrespective of quality of performance by other party); *Gravitte v. Mitsubishi Semiconductor Am., Inc.*, 109 N.C. App. 466, 472, 428 S.E.2d 254, 258 ("[T]he general rule is that, absent an employment contract for a definite period of time, *both employer and employee* are generally free to terminate their association at any time and without reason." (emphasis added)), *disc. review denied*, 334 N.C. 163, 432 S.E.2d 360 (1993).

Here, the uncontradicted evidence shows that, by entering into the Employment and Extension Agreements, plaintiff promised to work for defendant through 2008 and then through 2013. In making this promise—which he was not required to make—plaintiff gave up his right to leave his employment with defendant at any time, for any or no reason, without notice to defendant.

Although when discussing at-will employment, courts more typically focus on the benefits to the employer, at-will status can be of significant value to an employee as well. For example, employees with especially desirable skills or excellent reputations may be highly sought after by other employers. An employer, by entering into a contract for a specific term with such an employee, ensures that no other employer will be able to lure that employee away for higher pay or better benefits. On the other hand, the employee, by entering into the contract, foregoes the opportunity to accept other more lucrative job offers. Thus, the promise by plaintiff, in this case, to forego at-will employment constituted consideration. *See Swenson v. Legacy Health Sys.*, 169 Or. App. 546, 552, 9 P.3d 145, 148 (2000) ("As a matter of law, the promise of an at-will employee to continue in an employer's service for some specified future period of time constitutes consideration for an additional benefit promised by the employer.").

In reaching this decision, we find the case of *Bennett v. Eastern Rebuilders, Inc.*, 52 N.C. App. 579, 279 S.E.2d 46 (1981), persuasive. In *Bennett*, the plaintiff was employed as a lead person on the defendant's production line. *Id.* at 580, 279 S.E.2d at 48. Her position fell under a union contract giving her substantial job security. *Id.* The defendant persuaded the plaintiff to accept a promotion, which would result in the loss of her union protection and resulting job security, in exchange for the defendant's promise that she would not be fired if she did not work out as a supervisor but would instead be demoted to her former position as a lead person. *Id.*

Although *Bennett* is to some extent factually opposite from this case—in that the plaintiff in *Bennett* gave up job security (through

her union membership), whereas here plaintiff gave up his right to leave his employment—the rationale of *Bennett* is applicable. The Court in *Bennett* noted as a general matter that "an agreement between an employee and her employer concerning the manner in which her job could be terminated constitutes an enforceable agreement." *Id.* at 581, 279 S.E.2d at 48. As for the question of consideration, the Court observed that "[a]mple consideration for defendant's bargained for agreement to demote plaintiff rather than fire her may be found in her agreement to give up her union position and the job security that went with it." *Id.* at 582, 279 S.E.2d at 49.

Thus, in *Bennett*, sufficient consideration was found when an employee gave up her union status and the rights that accompanied it. Here, plaintiff analogously gave up his at-will status and the rights arising from that status. Contrary to defendant's argument that there was no consideration flowing from plaintiff, *Bennett* shows that plaintiff's giving up his freedom to leave his position constituted ample consideration for the Employment and Extension Agreements.

Defendant's reliance on *Franco v. Liposcience, Inc.*, 197 N.C. App. 59, 676 S.E.2d 500, *aff'd per curiam*, 363 N.C. 741, 686 S.E.2d 152 (2009), is misplaced. In *Franco*, the plaintiff was hired as an at-will employee. *Id.* at 63, 676 S.E.2d at 502. The plaintiff contended, however, that a letter from the defendant to the plaintiff formed a contract that precluded termination of his employment except for cause. *Id.*, 676 S.E.2d at 502-03. This Court held that although the letter contained evidence of consideration flowing from the defendant to the plaintiff, the letter "did not increase or diminish [the plaintiff's] pay, duties, rights, or anything else that could be deemed consideration flowing from [the plaintiff] to [the defendant]." *Id.*, 676 S.E.2d at 503. The Court, therefore, affirmed the trial court's grant of summary judgment to the defendant, noting that "mere continued employment by the employee is insufficient" to constitute consideration. *Id.*

Defendant overlooks the key distinction between *Franco* and this case. The decision in *Franco* was based on the lack of any evidence that the plaintiff gave something or gave up something in return for the defendant's promise; he just continued working. Here, by contrast, the uncontradicted evidence showed plaintiff *did* give up something—his right to leave at any time before the dates specified in the Employment and Extension Agreements. Thus, *Franco* is inapplicable. The trial court, in this case, properly concluded that the Employment and Extension Agreements were supported by consideration.

II

[2] Defendant also contends that the Employment and Extension Agreements are unenforceable because they violate North Carolina public policy. In support of this argument, defendant first points to a portion of Article V, Section 2 of the North Carolina Constitution:

> (7) *Contracts.* The General Assembly may enact laws whereby the State, any county, city or town, and any other public corporation may contract with and appropriate money to any person, association, or corporation for the accomplishment of public purposes only.

Defendant claims that the "nature of the subject employment agreements contemplates payment to the plaintiff, a private individual, regardless of whether his public service duties are performed. To find the subject employment agreements enforceable directly contradicts the constitutional limitation on contracts 'for the accomplishment of public purposes only.' " (Quoting N.C. Const. art. V, § 2.)

Our courts have established "[t]wo guiding principles . . . for determining that a particular undertaking by a municipality is for a public purpose: (1) it involves a reasonable connection with the convenience and necessity of the particular municipality; and (2) the activity benefits the public generally, as opposed to special interests or persons[.]" *Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 646, 386 S.E.2d 200, 207 (1989) (internal citation omitted).

With respect to the first prong, we note that the general duties of a Fire Chief include preserving and caring for fire apparatus, having charge of fighting and extinguishing fires and training the fire department, seeking out and having corrected all places and conditions dangerous to the safety of the city and its citizens from fire, and making annual reports to the council concerning these duties. N.C. Gen. Stat. § 160A-292 (2009). In view of these responsibilities, we hold that the employment and retention of a qualified Fire Chief to execute these duties does involve a reasonable connection with the convenience and necessity of a municipality.

We further hold, as to the second prong, that the employment of a Fire Chief benefits the public generally—not just the Fire Chief or special interests—because the Fire Chief is responsible for maintaining the "safety of the *city and its citizens* from fire." *Id.* (emphasis added). By contracting to retain plaintiff for an extended period of time, defendant ensured that it would, for several years, have the service of a qualified Fire Chief without fear that the Fire Chief would leave

**ELLIOTT v. ENKA-CANDLER FIRE & RESCUE DEP'T, INC.**

[213 N.C. App. 160 (2011)]

defendant for a better opportunity. We, therefore, hold that the Employment and Extension Agreements in this case do serve a public purpose.

Defendant further argues that the public purpose requirement is violated when a governmental body pays a private individual regardless whether he performs his public service duties. If, however, plaintiff had failed to perform his duties under the Agreements and defendant was entitled to discharge him for cause, then he would not have been paid. *See Menzel v. Metrolina Anesthesia Assocs.*, 66 N.C. App. 53, 59, 310 S.E.2d 400, 403-04 (1984) (noting that where termination clause in parties' contract provided that defendant would pay plaintiff two months' severance pay if defendant terminated contract, plaintiff's breach of contract would not trigger severance pay provisions of contract). The effect of the Agreements is that only if defendant terminates plaintiff *without cause* will defendant then have to pay plaintiff salary and benefits through the end of the contract, effectively severance pay. Again, we emphasize that defendant's giving plaintiff job security and promising severance pay in the event that plaintiff was terminated without cause was in furtherance of a public benefit: defendant was able to retain a Fire Chief for a significant period of time without fear that another municipality would lure him away.

Defendant next points to N.C. Gen. Stat. § 159-8(a) (2009), which provides:

Each local government and public authority shall operate under an annual balanced budget ordinance adopted and administered in accordance with this Article. A budget ordinance is balanced when the sum of estimated net revenues and appropriated fund balances is equal to appropriations. . . . It is the intent of this Article that . . . all moneys received and expended by a local government or public authority should be included in the budget ordinance. Therefore, notwithstanding any other provision of law, no local government or public authority may expend any moneys, regardless of their source . . . , except in accordance with a budget ordinance . . . .

Defendant points to an affidavit of Donna Clark, the Buncombe County Finance Director, which defendant alleges shows that defendant "made no provisions in its budget for payment of salary and benefits to the plaintiff once he was no longer employed by the Defendant." Defendant cites no authority, however, for the proposition

that a municipality can evade payment of severance pay or breach of contract damages by simply not budgeting for them. Nor do we know of any such authority.[1]

Defendant further relies on *Leete v. County of Warren*, 341 N.C. 116, 462 S.E.2d 476 (1995), to support its argument that the Employment and Extension Agreements violate public policy. In *Leete*, a group of taxpayers filed an action to enjoin the Warren County Board of Commissioners from following through on its decision to pay the County Manager, who had voluntarily resigned after nine years of service, six weeks of severance pay totaling $5,073.12. *Id.* at 117-18, 462 S.E.2d at 477. The Supreme Court held that the severance payment violated Article I, Section 32 of the North Carolina Constitution, which provides that " '[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services.' " 341 N.C. at 118, 462 S.E.2d at 477-78 (quoting N.C. Const. art. I, § 32).

The key distinction between *Leete* and this case is the existence of an enforceable contract for a public purpose. In *Leete*, the Court specifically noted that there was "no written employment contract" between the County and the County Manager, and, therefore, the severance pay the County Manager sought was "no more than a request for a gratuity, which the Board had no authority to pay." *Id.* at 122, 462 S.E.2d at 480. Here, the Employment and Extension Agreements were valid written contracts entitling plaintiff to certain payments upon termination by defendant. *See Myers v. Town of Plymouth*, 135 N.C. App. 707, 712, 522 S.E.2d 122, 125 (1999) (observing that in *Leete*, Supreme Court left open possibility that written contract which required severance payment could be enforceable), *disc. review improvidently allowed*, 352 N.C. 670, 535 S.E.2d 355 (2000).

[3] In sum, since defendant has not shown that the contract lacked consideration or violated public policy, we hold that the trial court did not err in finding that the contract is enforceable. After the trial court determined that the contract was enforceable, it was up to defendant to present evidence that it was not liable for breaching the contract. Since defendant did not present any evidence that plaintiff was not performing his duties adequately under the Agreements—that plaintiff breached the contract and could be fired for cause—summary judgment was properly entered for plaintiff.

---

1. We note, in any event, that the affidavit only refers generally to a former employee of defendant; there is no actual mention of plaintiff anywhere in the affidavit.

## III

**[4]** Finally, defendant insists that it was not provided sufficient notice of plaintiff's motion for summary judgment and was, therefore, only prepared to argue the limited issue of contract enforceability at the summary judgment hearing. Defendant contends that the trial court's entry of summary judgment for plaintiff and denial of defendant's motion for relief or for a new trial amounted to a substantial miscarriage of justice.

We review a trial court's ruling on a motion under Rule 59 (new trial) or Rule 60 (relief from judgment) for abuse of discretion. *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006). " 'A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

The record indicates that on 24 March 2010, defendant filed a motion for summary judgment and notice of hearing setting a calendar date for that motion of 12 April 2010. On 6 April 2010, plaintiff filed a motion for summary judgment and a notice of hearing calendaring plaintiff's motion for summary judgment for 10 May 2010. The same day, plaintiff filed a motion to continue the hearing on defendant's summary judgment motion, noting that the litigation paralegal assigned to the case was due to give birth immediately but was needed "to prepare a Memorandum in Support of/Opposition to Summary Judgment." The trial court granted plaintiff's motion for a continuance and ordered that the hearing on defendant's motion for summary judgment would be continued to 10 May 2010.

According to defendant, however, the only document that was ever served upon defense counsel was plaintiff's "Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and In Support of Summary Judgment for Plaintiff." Defendant claims that it was not served with plaintiff's motion for summary judgment or notice of hearing and that defense counsel "assumed" that plaintiff sought to obtain summary judgment under Rule 56(c) of the Rules of Civil Procedure, which provides that summary judgment may be rendered against the moving party when appropriate.

Further, defendant claims that plaintiff's motion for a continuance "bolstered" defendant's assumption and that defendant believed it would eventually receive a copy of plaintiff's motion for summary

judgment and notice of hearing before the 10 May 2010 hearing date. Since defendant did not receive the notice or motion before 10 May 2010, however, defendant claims its counsel was only prepared to argue the issue of contract enforceability at the hearing. Defendant asserts that, at the summary judgment hearing, it alerted the trial court that defense counsel was "not prepared" for any issue other than the contract's enforceability and requested that the ruling be limited to the issue of enforceability. The trial court, however, denied the request.

After the trial court entered judgment for plaintiff, defendant filed the motion for relief or for a new trial, setting out the above allegations. Following a hearing, the trial court entered an order on 26 May 2010 denying the motion.

The record in this case reveals that defendant's 24 March 2010 motion for summary judgment stated that defendant "moves this Court pursuant to Rule 56 of the North Carolina Rules of Civil Procedure for a Summary Judgment on the Ground that there is no genuine issue as to any material fact as shown by the pleadings, written discovery exchanged between the parties, and deposition, and Movants are entitled to judgment as a matter of law." The motion was not limited to any particular issue, contrary to defendant's claim that it was raising only the narrow issue of contract enforceability.

Rule 56(c) allows the trial court to grant summary judgment to the non-moving party: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." (Emphasis added.) Thus, under Rule 56(c), the trial court could have granted plaintiff summary judgment based on the materials presented by defendant, even without plaintiff's motion. *See Westover Prods., Inc. v. Gateway Roofing, Inc.*, 94 N.C. App. 163, 166-67, 380 S.E.2d 375, 377 (1989) (applying Rule 56(c) in overruling property owner's argument that trial court erred in granting roofing materials supplier's oral motion for summary judgment, made at hearing on owner's motion for summary judgment, because owner was given no opportunity to be heard on merits of motion, and because no materials were submitted by parties in support or opposition to motion).

Defendant admits that it received plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Summary Judgment for Plaintiff. Although defendant

argues that it assumed that plaintiff was seeking summary judgment based on Rule 56(c) without filing a separate summary judgment motion, defendant does not explain why this distinction makes a difference. Nor does defendant explain why the Memorandum's notice that plaintiff was himself seeking summary judgment was inadequate notice, in light of Rule 56(c), in the absence of a separate motion for summary judgment—especially given defendant's broad motion for summary judgment.

Moreover, there is no indication in the record that defendant made any showing to the trial court of what evidence it would have presented had it had the additional notice of a motion by plaintiff for summary judgment. *See Ripellino v. N.C. Sch. Bds. Ass'n*, 158 N.C. App. 423, 427, 581 S.E.2d 88, 91 (2003) (holding trial court did not err in denying plaintiffs' motion for continuance of summary judgment hearing when they failed to show that new information relevant to limited issue presented in summary judgment hearing would be discovered), *cert. denied*, 358 N.C. 156, 592 S.E.2d 694 (2004). Accordingly, we hold that the trial court did not abuse its discretion in denying defendant's motion for relief or for a new trial.

Affirmed.

Judges BRYANT and ELMORE concur.